# STATE OF MICHIGAN

# COURT OF APPEALS

PHILLIP RANDAZZO and BOOKER SNOW,

        Plaintiffs-Appellees,

v

CITY OF INKSTER, RON WOLKOWICZ, and
HILTON NAPOLEON,

        Defendants-Appellants.

UNPUBLISHED
March 15, 2016

Nos. 324149; 324400
Wayne Circuit Court
LC No. 13-003917-CZ

Before: M. J. KELLY, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

In Docket No. 324149, defendants, City of Inkster, Ron Wolkowicz, and Hilton Napoleon, appeal as of right the judgments entered in favor of plaintiffs, Phillip Randazzo and Booker Snow, following a jury trial in this action alleging violations of the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*[1] In Docket No. 324400, defendants appeal as of right the trial court's order denying their request for case evaluation sanctions against plaintiff Snow. We affirm the judgments for plaintiffs, but reverse the trial court's order denying case evaluation sanctions against Snow.

Plaintiffs Randazzo and Snow were employed as police officers with defendant city while it was in financial crisis and operating pursuant to a consent agreement with the state of Michigan. The police union became concerned with the actions of defendant Napoleon, the city's chief of police. Randazzo, the chief steward of the union, sent a letter to then city manager, defendant Wolkowicz, regarding Napoleon's actions, but received no response. In November 2012, the union held a meeting and agreed to send a letter of no confidence to the press, city manager, city council, and governor. Randazzo signed the letter in his union capacity. The letter alleged that Napoleon violated department rules and regulations that placed the safety of police officers at risk. Thereafter, Napoleon levelled 22 claims of misconduct against Randazzo. He also alleged that the letter submitted by Randazzo, a Caucasian, was racially motivated. Hearings on Napoleon's charges against Randazzo were scheduled, and Randazzo

---

[1] The trial court granted defendants' motion for a directed verdict of plaintiffs' claim alleging violation of the Elliot-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*

-1-

believed he would be terminated at those hearings. Randazzo alleged that the charges were levelled against him in retaliation for the no-confidence letter, and that he was also passed over for promotions and suffered emotionally. Ultimately, a successor to Wolkowicz concluded that no disciplinary action would be taken against Randazzo.

Snow, an African-American, asserted that he suffered from retaliation for supporting the vote of no confidence. Specifically, he alleged that Napoleon directed a racially charged statement at him and asserted that Snow had stabbed him in the back. According to Snow, Napoleon also insinuated that Snow could be forced to retire because of his age. Snow also alleged that his compensatory time was audited on three occasions, resulting in a determination that he owed 159 hours to the city when he believed he had actually earned 700 hours. Both plaintiffs acknowledged that they were not fired or demoted. The jury awarded Randazzo $125,000 in damages and awarded Snow $24,000 in damages.

Defendants first argue that the trial court erred by denying their motion for a directed verdict of the WPA claim. They contend that plaintiffs failed to establish a violation of a law, rule, or regulation, and failed to establish an adverse employment action.[2] We disagree.

The purpose of the WPA is to protect the public health and safety, and it achieves its goal by protecting a whistleblowing employee and by removing barriers that may prohibit employee efforts to disclose violations or suspected violations of the law. *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 378-379; 563 NW2d 23 (1997). The intent of the act was to protect employees who advise the public of corruption or criminally irresponsible behavior transpiring in government or business. *Id*. at 381. The WPA is a remedial statute, and it must "be liberally construed to favor the persons the Legislature intended to benefit." *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 406; 572 NW2d 210 (1998). The act is designed to safeguard an employee who reports or is about to report a violation or suspected violation of law or regulation to a public body. *Brown v Mayor of Detroit*, 478 Mich 589, 594; 734 NW2d 514 (2007).

MCL 15.362 of the WPA states:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on

---

[2] We review a trial court's decision on a motion for a directed verdict de novo. *Krohn v Home-Owners Ins Co*, 490 Mich 145, 155; 802 NW2d 281 (2011). "The interpretation of the WPA presents a statutory question that this Court reviews de novo." *Wurtz v Beecher Metro Dist*, 495 Mich 242, 249; 848 NW2d 121 (2014). When examining a motion for directed verdict, the court must view the evidence in the light most favorable to the nonmoving party. *Chouman v Home Owners Ins Co*, 293 Mich App 434, 441; 810 NW2d 88 (2011). A motion for a directed verdict is properly granted only when there is no factual question upon which reasonable minds could differ. *Heaton v Benton Constr Co*, 286 Mich App 528, 532; 780 NW2d 618 (2009).

behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

To demonstrate a prima facie case, the plaintiff must establish that the defendant employer violated the WPA because the employee was engaged in a protected activity delineated in MCL 15.362, the employee was discharged, threatened or otherwise discriminated against, and a causal connection exists between the employee's protected activity and the employer's act of discharging, threatening, or otherwise discriminating against the employee. *Wurtz*, 495 Mich at 250-252; *Debano-Griffin v Lake Co Bd of Comm'rs*, 493 Mich 167, 175; 828 NW2d 634 (2013).

In *Henry v City of Detroit*, 234 Mich App 405, 409-410; 594 NW2d 107 (1999), this Court addressed two types of whistleblowers:

The plain language of the statute provides protection for two types of "whistleblowers": (1) those who report, or are about to report, violations of law, regulation, or rule to a public body, and (2) those who are requested by a public body to participate in an investigation held by that public body or in a court action. On the basis of the plain language of the WPA, we interpret a type 1 whistleblower to be one who, on his own initiative, takes it upon himself to communicate the employer's wrongful conduct to a public body in an attempt to bring the, as yet hidden, violation to light to remedy the situation or harm done by the violation. In other words, we see type 1 whistleblowers as initiators, as opposed to type 2 whistleblowers who participate in a previously initiated investigation or hearing at the behest of a public body. If a plaintiff falls under either category, then that plaintiff is engaged in a "protected activity" for purposes of presenting a prima facie case. [Citations omitted.]

A "public body" is defined to include state, city, and law enforcement entities or their employees. MCL 15.361(d). When there is a factual dispute regarding whether a causal connection exists between alleged protected activity and adverse action, the issue presents a question for resolution by the trier of fact. See *Henry*, 234 Mich App at 414.

Defendants first argue that the trial court erred by denying their motion for a directed verdict because there was no evidence of a violation of a law, regulation, or rule, and plaintiffs failed to admit evidence of any applicable police regulations. Defendants assert that the only testimony regarding police rules and regulations was offered by defense witness Gregory Gaskin, who testified that plaintiffs' letter addressed discretionary policies of the chief or officer in charge.

Internal police policies and rules are sufficient to qualify as a law, rule, or regulation for purposes of the WPA. *Id*. at 410. Furthermore, although Gaskin testified that the chief had discretion over police matters, he acknowledged that the chief was expected to follow the department's rules and regulations. Randazzo testified that Napoleon violated rules and

regulations governing barricaded gunmen and that the violation jeopardized the public and responding police officers. Irrespective of the failure to admit the actual text of the rules and regulations, there was evidence to support that a violation of rules and regulations occurred for purposes of the WPA. Accordingly, the letter of no confidence, which asserted that Napoleon violated police department rules and regulations, was sufficient to support a violation of MCL 15.362 of the WPA.

Defendants further argue that there was no evidence of an adverse employment action because neither plaintiff was fired or demoted. The scope of prohibited retaliation under the WPA is set forth in MCL 15.362, which provides that an employer "shall not discharge, *threaten*, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment" for engaging in protected activity. (emphasis added). Plaintiffs both indicated that they were threatened because they engaged in a protected activity. Randazzo signed the letter of no confidence as the union steward. Thereafter, he was told to participate in an investigation and he was threatened with termination. Snow testified that Napoleon accused him of stabbing the chief in the back, and he stated that Napoleon spoke to him regarding retirement. Additionally, Snow testified that he was denied compensatory time, which amounted to a loss of compensation. The evidence established a genuine issue of material fact regarding whether plaintiffs were subject to an adverse employment action under the WPA.

Finally, defendants argue that there was no evidence of causation, that is, no relationship between the letter of no confidence and the misconduct charges against Randazzo and the audit against Snow. However, the motivation for the defendants' actions against the plaintiffs presented an issue for resolution by the jury. See *Henry*, 234 Mich App at 414.

Accordingly, the trial court did not err in denying defendants' motion for a directed verdict of the WPA claim. *Krohn*, 490 Mich at 155.

Next, defendants argue that the trial court erred in admitting a summary report prepared by Risk Management Associates, Inc. (RMA).[3] We disagree.

The RMA summary was prepared for then-city manager, Richard Marsh, to evaluate the police department and broader issues of public safety in light of severe economic restrictions. However, it was probative of contested issues in the instant case. It reflected a breakdown in the entire government system, including the mayor and city council, and indicated that the situation was exacerbated by the lack of funds. It criticized Napoleon's relationship with his police officers. The report indicated that the police culture was adversarial, that Napoleon publicly called his officers "liars," and that the officers' vote of no confidence was warranted. The report also faulted the police officers for their role in failing to take reports, their attitude, and their failure to clear cases.

---

[3] We review a trial court's decision to admit evidence for an abuse of discretion. *Barnett v Hidalgo*, 478 Mich 151, 158-159; 732 NW2d 472 (2007).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. All relevant evidence is generally admissible. MRE 402. A review of the RMA report reveals that it is probative of the parties' theories of the case. Plaintiffs' theory of the case was that Napoleon did not follow rules and regulations, and his operation of the police department placed officers at risk. Conversely, defendants' theory of the case was that plaintiffs were disgruntled at their reduction in overtime and salary and the use of auxiliary officers. The RMA report, as a whole, contained support for both theories of the case, and therefore, was relevant. MRE 401. The report indicated that the police officers did not have confidence in Napoleon's ability to lead and did not have a performance based system in place with updated policies and procedures. However, it also acknowledged that the police officers had an adversarial relationship with the auxiliary officers, were not performing to serve the citizens, and failed to take reports and investigate and close cases. Accordingly, the trial court did not abuse its discretion in ruling that the report was relevant evidence.

Defendants also argue that the RMA report should have been excluded because its probative value was substantially outweighed by the danger of unfair prejudice. Relevant evidence may be excluded under MRE 403 if the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, undue delay, waste of time, or needless presentation of cumulative evidence." *Taylor v Mobley*, 279 Mich App 309, 315; 760 NW2d 234 (2008). "Unfair prejudice exists where there is danger that the evidence will be given undue or preemptive weight by the trier of fact or when it would be inequitable to allow the use of such evidence." *Id.*

The summary report does not support the contention that the evidence was unfairly prejudicial. The report contains only bullet points. Although the lack of explanation accompanying the report summary is a factor that reduces the probative value of the evidence, the lack of explanation also minimizes the potential for unfair prejudice. Defendants were permitted to attack its lack of specificity and detail, and Napoleon was allowed to offer his opinion that the report was useless because the research firm members were unqualified and did not conduct extensive interviews. As a whole, the report was critical of all parties, including the police, and validated defendants' contention that police officers were upset about the use of auxiliary officers. Under the circumstances, MRE 403 was not clearly violated.

Defendants next argue that the trial court erred by denying their request for supplemental jury instructions addressing "adverse employment action."[4] We disagree.

---

[4] Questions regarding instructional error are reviewed de novo, but whether an instruction is accurate and applicable is reviewed for an abuse of discretion. *Freed v Salas*, 286 Mich App 300, 327; 780 NW2d 844 (2009). A trial court's decision regarding supplemental jury instructions is reviewed for an abuse of discretion. *Guerrero v Smith*, 280 Mich App 647, 660; 761 NW2d 723 (2008). Whether a special verdict may be submitted to the jury also presents a discretionary issue for the trial court. *In re Portus*, 142 Mich App 799, 803-804; 371 NW2d 871

"Jury instructions are reviewed in their entirety to determine whether they accurately and fairly presented the applicable law and the parties' theories." *Guerrero v Smith*, 280 Mich App 647, 660; 761 NW2d 723 (2008). The instructions "should not omit material issues, defenses, or theories that are supported by the evidence." *Ward v Consolidated Rail Corp*, 472 Mich 77, 83-84; 693 NW2d 366 (2005). As recognized in MCR 2.512(D)(1), the Committee on Model Civil Jury Instructions is given the authority to adopt model jury instructions. Subrules (D)(2) and (3) of that rule provide:

> (2) Pertinent portions of the instructions approved by the Committee on Model Civil Jury Instructions . . . or a predecessor committee must be given in each action in which jury instructions are given if
>
> > (a) they are applicable,
> >
> > (b) they accurately state the applicable law, and
> >
> > (c) they are requested by a party.
>
> (3) Whenever a committee recommends that no instruction be given on a particular matter, the court shall not give an instruction unless it specifically finds for reasons stated on the record that
>
> > (a) the instruction is necessary to state the applicable law accurately, and
> >
> > (b) the matter is not adequately covered by other pertinent model jury instructions.

However, the trial court retains the authority "to give additional instructions on applicable law not covered by the model instructions." MCR 2.512(D)(4). "When the standard jury instructions do not adequately cover an area, the trial court is obligated to give additional instructions when requested, if the supplemental instructions properly inform the jury of the applicable law and are supported by the evidence." *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 401-402; 628 NW2d 86 (2001).

We conclude that the trial court did not abuse its discretion by refusing to give defendants' requested supplemental jury instructions addressing "adverse employment actions" because the instructions were modeled on jurisprudence discussing the scope of protection under other state and federal antidiscrimination statutes, and not the WPA. In *Wurtz*, our Supreme Court rejected the application of the phrase "adverse employment action" to WPA claims, stating:

> Many courts, including this one, have at times grouped the collection of retaliatory acts that an employer might take toward a whistleblower under the broader term "adverse employment actions." See, e.g., *Whitman* [*v City of*

(1985). An abuse of discretion occurs only when the decision falls outside the range of reasonable and principled outcomes. *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007).

-6-

*Burton*], 493 Mich [303,] 313; [831 NW2d 223 (2013);] cf. *Chandler* [*v Dowell Schlumberger Inc*], 456 Mich [395,] 399[; 572 NW2d 210 (1998)] (drawing the second element of a prima facie WPA claim directly from the statutory language). But the way that the term has obtained meaning resembles the telephone game in which a secret is passed from person to person until the original message becomes unrecognizable. The term "adverse employment action" was originally developed and defined in the context of federal antidiscrimination statutes to encompass the various ways that an employer might retaliate or discriminate against an employee on the basis of age, sex, or race. See *Crady v Liberty Nat'l Bank & Trust Co of Indiana*, 993 F2d 132, 136 (CA 7, 1993) ("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."). The term "adverse employment action" appeared in this Court's jurisprudence for the first time in an age discrimination case, *Town v Mich Bell Tel Co*, 455 Mich 688, 695; 568 NW2d 64 (1997), though the statute at issue in that case, as here, did not contain the term. Michigan courts then adopted the federal definition of "adverse employment action" in the context of making out a prima facie case under Michigan's Civil Rights Act. *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 362-366; 597 NW2d 250 (1999). Finally, the term crept into WPA cases. See *Debano-Griffin v Lake Co*, 493 Mich 167, 175-176; 828 NW2d 634 (2013); *Brown v Detroit Mayor*, 271 Mich App 692, 706; 723 NW2d 464 (2006), aff'd in relevant part, 478 Mich 589 (2007).

While the term "adverse employment action" may be helpful shorthand for the different ways that an employer could retaliate or discriminate against an employee, this case illustrates how such haphazard, telephone-game jurisprudence can lead courts far afield of the statutory language. That is, despite courts' freewheeling transference of the term from one statute to another, the WPA actually prohibits *different* "adverse employment actions" than the federal and state antidiscrimination statutes. So we take this opportunity to return to the express language of the WPA when it comes to the necessary showing for a prima facie case under that statute. Put another way, a plaintiff's demonstration of some abstract "adverse employment action" as that term has developed in other lines of caselaw will not be sufficient. Rather, the plaintiff must demonstrate one of the specific adverse employment actions listed in the WPA. [*Wurtz*, 495 Mich at 251-252 n 14 (emphasis in original).]

Defendants concede that the trial court's jury instruction was "technically accurate," but argue that it was incomplete because it failed to adequately explain what constitutes an "adverse employment action." However, defendants rely exclusively on cases applying that phrase in the context of state and federal antidiscrimination statutes, or WPA cases decided before *Wurtz* that

in turn relied on the inappropriate use of that term as explained in *Wurtz*.[5] In light of our Supreme Court's direction regarding the phrase "adverse employment action" and its application to WPA cases, the trial court did not err in denying the requested special supplemental instructions. *Jimkoski v Shupe*, 282 Mich App 1, 9; 763 NW2d 1 (2008). The *Wurtz* Court noted the origin of the phrase "adverse employment action" in federal antidiscrimination law, its migration into Michigan's employment and discrimination law, and its eventual transference from civil rights cases to WPA claims. *Wurtz*, 495 Mich at 252 n 14. Instead of sanctioning this process and migration, our Supreme Court directed that a plaintiff was not required to demonstrate some abstract adverse employment action; rather, the language of the WPA statute, MCL 15.362, controls the plaintiff's burden of proof. *Id*. In light of *Wurtz*, we reject defendants' contention that the trial court erred by failing to give the requested special instructions addressing "adverse employment action."

Defendants also contend that the jury verdict form was erroneous because it did not require the jury to find that plaintiffs suffered an "adverse employment action." Because *Wurtz* advises that "adverse employment action" is not the standard in WPA cases, and the trial court otherwise instructed the jury on the law applicable to WPA cases, the verdict form's omission and lack of direction regarding the phrase is of no consequence, and defendants are not entitled to relief with respect to this issue.

Lastly, defendants argue that the trial court erred in denying their request for case evaluation sanctions against Snow.[6] We agree.

MCR 2.403(O) provides, in pertinent part:

---

[5] Defendants cite two WPA cases. They cite this Court's decision in *Wurtz v Beecher Metro Dist*, 298 Mich App 75; 825 NW2d 651 (2012), which our Supreme Court subsequently reversed in *Wurtz*, 495 Mich 202. Defendants also cite *Brown*, 478 Mich 589. The Supreme Court in *Brown* did not actually address this element of a WPA claim. Although this Court had addressed this element in its decision in that case, the Supreme Court in *Wurtz* cited this Court's decision in *Brown v Detroit Mayor*, 271 Mich App 692, 706; 723 NW2d 464 (2006), aff'd in relevant part, 478 Mich 589 (2007), as an example of a case where the federal definition of "adverse employment action" improperly "crept into WPA cases." See *Wurtz*, 495 Mich at 252 n 14. Therefore, defendants' reliance on these cases is misplaced.

[6] "A trial court's decision whether to grant case evaluation sanctions under MCR 2.403(O) presents a question of law" that we review de novo. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). Resolution of this issue involves the interpretation of a court rule. The proper interpretation of a court rule is subject to de novo review, and the same principles governing statutory construction apply. *Fraser Trebilcock Davis & Dunlap PC v Boyce Trust 2350*, 497 Mich 265, 271; 870 NW2d 494 (2015). The court rule must be interpreted in accordance with its plain language, and effect must be given to every word or phrase according to its commonly accepted meaning unless otherwise expressly defined. *Id*.

(1) If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

(2) For the purpose of this rule "verdict" includes,

(a) a jury verdict,

(b) a judgment by the court after a nonjury trial,

(c) a judgment entered as a result of a ruling on a motion after rejection of the case evaluation.

(3) For the purpose of subrule (O)(1), a verdict must be adjusted by adding to it assessable costs and interest on the amount of the verdict from the filing of the complaint to the date of the case evaluation, and, if applicable, by making the adjustment of future damages as provided by MCL 600.6306. After this adjustment, the verdict is considered more favorable to a defendant if it is more than 10 percent below the evaluation, and is considered more favorable to the plaintiff if it is more than 10 percent above the evaluation. If the evaluation was zero, a verdict finding that a defendant is not liable to the plaintiff shall be deemed more favorable to the defendant.

* * *

(6) For the purpose of this rule, actual costs are

(a) those costs taxable in any civil action, and

(b) a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation.

For the purpose of determining taxable costs under this subrule and under MCR 2.625, the party entitled to recover actual costs under this rule shall be considered the prevailing party.

Each plaintiff received a case evaluation award of $40,000. All parties rejected the case evaluation award. Therefore, for defendants to be entitled to case evaluation sanctions as the opposing, rejecting party, the verdict must be more favorable to defendants than the case evaluation. MCR 2.403(O)(1). To analyze MCR 2.403(O)(1), the verdict must be adjusted by adding to it "assessable costs" and interests on the amount of the verdict from the time of the complaint to the date of the case evaluation. MCR 2.403(O)(3). After this calculation, the verdict is deemed more favorable to the defendants if it is more than 10 percent below the evaluation. MCR 2.403(O)(3). The jury awarded Snow $24,000. In addition to the jury's verdict, the trial court awarded plaintiffs' attorney fees totaling $50,593.08 pursuant to the WPA,

MCL 15.364. Relying on *Grow v W A Thomas Co*, 236 Mich App 696, 718-719; 601 NW2d 426 (1999), the trial court concluded that it was permissible to add those attorney fees to the jury's verdict to arrive at an adjusted verdict well in excess of the threshold amount for defendants to be entitled to case evaluation sanctions.

On appeal, Snow continues to rely on *Grow* for the proposition that attorney fees were properly included in calculating the adjusted verdict. See *id*. We note, however, that the portion of the *Grow* decision on which Snow relies is obiter dictum because the Court in *Grow* acknowledged that the issue was moot. See *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 597-598; 374 NW2d 905 (1985). More significantly, since *Grow* was decided, this Court and our Supreme Court have revisited the question.

In *Dessart v Burak*, 470 Mich 37, 38-39; 678 NW2d 615 (2004), the plaintiff was injured in an automobile accident with the defendant, and he and his wife filed a third-party negligence action for injuries caused by the accident. Before trial, the case evaluation panel evaluated the case at $120,000, and although the plaintiffs accepted the evaluation, it was rejected by the defendants. A jury awarded the plaintiffs $100,000 in damages. *Id*. at 39. The circuit court denied the plaintiffs' motion for case evaluation sanctions pursuant to MCR 2.403, concluding that the adjusted verdict was more favorable to the defendants and rejecting the contention that the actual costs could include attorney fees. *Id*. To demonstrate entitlement to case evaluation sanctions, the plaintiffs included an award of attorney fees in calculating assessable costs. *Id*. at 40. Our Supreme Court rejected that interpretation, holding:

> We agree with the Court of Appeals that attorney fees, whether incurred before or after the mediation evaluation, are not an element of "assessable costs" under MCR 2.403(O)(3). The general "American rule" is that "attorney fees are not ordinarily recoverable unless a statute, court rule, or common-law exception provides the contrary." *Nemeth v Abonmarche Dev, Inc*, 457 Mich 16, 37-38; 567 NW2d 641 (1998). As such, the term "costs" ordinarily does not encompass attorney fees unless the statute or court rule specifically defines "costs" as including attorney fees. For example, MCR 2.403(O)(6) provides that "actual costs" include "(a) those costs taxable in any civil action, and (b) a reasonable attorney fee . . . ." MCR 2.403(O)(6), however, does not define "assessable costs" as including attorney fees. *We conclude, therefore, that attorney fees are not included in "assessable costs" under MCR 2.403(O)(3)*. [*Id*. at 42 (emphasis added).]

Snow nevertheless argues that when a statute provides for attorney fees as an element of costs, it may be included in the award of case evaluation sanctions. Snow relies on MCL 15.364 of the WPA, which provides:

> A court, in rendering a judgment in an action brought pursuant to this act, shall order, as the court considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages, or any combination of these remedies. A court may also award the complainant all or a portion of the costs of litigation, including reasonable

attorney fees and witness fees, if the court determines that the award is appropriate.

However, in *Ivezaj v Auto Club Ins Ass'n*, 275 Mich App 349, 362-367; 737 NW2d 807 (2009), this Court concluded that an award of attorney fees under MCL 500.3148(1) should not be included in determining an "adjusted verdict" for purposes of determining liability for case evaluation sanctions, even though the subject attorney fee was recoverable as part of the statutory cause of action. Given these decisions, we must reject Snow's argument.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro