*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KIM FOWLER,

       Plaintiff-Appellant,

v

BERRIEN COUNTY PUBLIC DEFENDER'S
OFFICE and BERRIEN COUNTY,

       Defendants-Appellees.

UNPUBLISHED
November 21, 2023

No. 362710
Berrien Circuit Court
LC No. 2020-000100-CD

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition to defendants pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. FACTUAL BACKGROUND

This case arises from the termination of plaintiff's employment as an investigator with the Berrien County Public Defender's Office. Plaintiff started working as a part-time investigator in December 2016, and became a full-time investigator in October 2018. He was promoted to chief investigator in February 2019. As chief investigator, plaintiff reported to the chief public defender, Christopher Renna. In turn, Renna reported to the Berrien County administrator, William Wolf.

Plaintiff's eventual termination involved the public defender office's representation of Daniel Steven White and the release of video of White's arrest to the media. White was arrested following an altercation with police officers in May 2019. The case was assigned to public defender Carri Briseno. She asked plaintiff to obtain video of the incident from police body cameras. After watching the video received from the Berrien Springs Police Department, plaintiff believed that a Berrien County Sheriff's deputy used excessive force while arresting White. Plaintiff also believed that the deputy committed perjury while testifying at the preliminary examination.

White was charged with two counts of resisting and obstructing a police officer and one count of domestic violence. He pleaded guilty to one count of resisting and obstructing and

-1-

domestic violence. Before White's sentencing, plaintiff reported his concerns involving excessive force to the probation department and the supervisory group at the Michigan Department of Corrections. Plaintiff offered a recording of the video that he had on his phone to the prosecutor at White's sentencing. Briseno asked the court to watch the video before sentencing White. The court agreed to watch a portion of the video.

While White's criminal case was ongoing, his mother contacted Gwenetta Swanigan, a community activist and founder of a nonprofit organization called the Society Harmonizing Against Racial Profiling Foundation. Swanigan visited White in jail and assisted him with his claim involving police brutality. In July 2019, White signed a release, which allowed the public defender's office to distribute materials related to his case. White requested that the video of his arrest be provided to Swanigan. Plaintiff put the video on a thumb drive and sent Swanigan an e-mail informing her that it was ready. Swanigan obtained the video from the public defender's office and released it to a local news reporter. In November 2019, the reporter wrote a story related to the incident, which included the video. In response to hearing complaints that plaintiff released the video to the media, Wolf asked Renna to discuss the issue with plaintiff. Renna reported that plaintiff denied releasing the video and asserted that a third party provided it to the media. Wolf was satisfied with that explanation and considered the incident closed.

However, in February 2020, another incident involving allegations of police brutality became public when the same reporter released a story about Michael Thompson's arrest by officers with the Benton Harbor Police Department. The report also included video of the arrest. Swanigan was also involved in the Thompson incident. Wolf again heard concerns that plaintiff released the video to the media. At about the same time, he also became aware that plaintiff attempted to access information from an employee at the Berrien County Sheriff's Office without going through the proper channels for doing so. Wolf again asked Renna to speak to plaintiff concerning the release of the video. Plaintiff continued to deny releasing the video. Wolf then reviewed plaintiff's e-mails and discovered e-mails that he sent to Swanigan in regard to the video in the White case. He asked Renna to question plaintiff about the release of the video for a final time. Plaintiff once again denied releasing the video. Wolf ultimately made the decision to terminate plaintiff's employment because he was dishonest in his answers to Renna's questions.

Following his termination, plaintiff filed a complaint alleging that his termination violated the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*, and public policy. After conducting discovery, defendants moved for summary disposition, which the trial court ultimately granted. This appeal followed.

## II. ANALYSIS

Plaintiff argues that the trial court erred by concluding that the termination of his employment with the public defender's office did not violate the WPA. He further asserts that the court erred by determining that the termination of his employment did not violate public policy. We disagree.

## A. STANDARD OF REVIEW

We review a trial court's ruling on a motion for summary disposition de novo. *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 479; 642 NW2d 406 (2001). When reviewing a motion brought pursuant to MCR 2.116(C)(10),[1] "[t]he reviewing court should . . . consider[] the substantively admissible evidence actually proffered in opposition to the motion." *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 470; 957 NW2d 377 (2020) (quotation marks and citation omitted). This includes "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties." *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). However, a court may not "assess credibility" or "determine facts on a motion for summary judgment." *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). A summary disposition motion brought under this subsection is granted when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10).

## B. WPA CLAIMS

Plaintiff first argues that his termination was the result of improper retaliation under the WPA. We disagree.

According to MCL 15.362,

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

"To establish a prima facie violation of the WPA, a plaintiff must show (1) that the plaintiff was engaged in a protected activity as defined by the WPA, (2) that the plaintiff was discharged, and (3) a causal connection existed between the protected activity and the discharge." *Henry v Detroit*, 234 Mich App 405, 409; 594 NW2d 107 (1999). This Court has identified two types of "whistleblowers." *Id*. A "Type 1" whistleblower includes "those who report, or are about to report, violation of law, regulation, or rule to a public body . . . ." *Id*. This Court has defined a Type 1 whistleblower "to be one who, on his own initiative, takes it upon himself to communicate the employer's wrongful conduct to a public body in attempt to bring the, as yet hidden, violation

---

[1] The trial court stated that it granted summary disposition as to plaintiff's public-policy claim under both MCR 2.116(C)(8) (failure to state a claim) and MCR 2.116(C)(10). However, because the court considered evidence outside of the pleadings in its ruling, we treat the motion as if it was decided under MCR 2.116(C)(10). See *Shah v State Farm Mut Auto Ins Co*, 324 Mich App 182, 207; 920 NW2d 148 (2018).

to light to remedy the situation or harm done by the violation." *Id*. at 410. A "Type 2" whistleblower includes "those who are requested by a public body to participate in an investigation held by that public body or in a court action." *Id*. at 409. Type 2 whistleblowers "participate in a previously initiated investigation or hearing at the behest of a public body." *Id*. "If a plaintiff falls under either category, then that plaintiff is engaged in a 'protected activity' for purposes of presenting a prima facie case." *Id*.

According to MCL 15.361(d), a "public body" is defined as any the following:

(*i*) A state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of state government.

(*ii*) An agency, board, commission, council, member, or employee of the legislative branch of state government.

(*iii*) A county, city, township, village, intercounty, intercity, or regional governing body, a council, school district, special district, or municipal corporation, or a board, department, commission, council, agency, or any member or employee thereof.

(*iv*) Any other body which is created by state or local authority or which is primarily funded by or through state or local authority, or any member or employee of that body.

(*v*) A law enforcement agency or any member or employee of a law enforcement agency.

(*vi*) The judiciary and any member or employee of the judiciary.

In this case, plaintiff asserts that he was both a Type 1 and a Type 2 whistleblower. Regarding whether plaintiff is a Type 1 whistleblower, there is no dispute that plaintiff was terminated from his position as the lead investigator at the public defender's office, which would be considered a "public body" under MCL 15.361(d). However, he has not shown that he engaged in protected activity as a Type 1 whistleblower, and therefore cannot establish a prima facie violation of the WPA on these facts. Plaintiff alleges that he was terminated for reporting the use of excessive force and possible perjury by a Berrien County Sheriff's deputy. Contrary to his argument, the evidence demonstrates that, at most, plaintiff discussed these concerns with those involved in the defense and prosecution of White. Plaintiff's motivation was to present this information to obtain a more favorable result for White, which was a goal of the public defender's office. He did not, on his own initiative, report any wrongdoing to a public body in an attempt to bring a hidden violation to light. See *Henry*, 234 Mich App at 410. Both the prosecutor and the defense attorney had access to the video before sentencing, and the defense attorney requested that the sentencing judge watch the video at the sentencing hearing. The judge agreed to watch a portion of the video before imposing White's sentence. As observed by the trial court, plaintiff was not terminated for reporting his concerns involving excessive force and perjury. His termination involved the release of the police video to Swanigan—who was not herself a public

official or a member of a public body. As a result, providing the video to Swanigan or the media would not constitute protected activity as a Type 1 whistleblower.

Second, plaintiff has not demonstrated a causal link between any alleged protected activity and the adverse employment action. "A plaintiff may establish a causal connection through either direct evidence or indirect and circumstantial evidence." *Shaw v City of Ecorse*, 283 Mich App 1, 14; 770 NW2d 31 (2009). "Direct evidence is that which, if believed, requires the conclusion that the plaintiff's protected activity was at least a motivating factor in the employer's actions." *Id*. On the other hand, "[t]o establish causation using circumstantial evidence, the circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Id*. at 14-15 (quotation marks and citation omitted). "[T]he evidence presented will be sufficient to create a triable issue of fact if the jury could reasonably infer from the evidence that the employer's actions were motivated by retaliation." *Id*. at 15.

Accepting plaintiff's argument that he reported, or was about to report, a possible violation of law by a police officer, any such reports would have been made in August 2019, when White was sentenced. There is no indication that plaintiff was terminated in March 2020 because he reported his concerns related to excessive force and perjury to the prosecutor, probation department, or Department of Corrections in August 2019. Instead, the conduct that ultimately led to plaintiff's termination concerned the release of the video to a third party and lying about it to his direct superiors. It is unclear whether Wolf, who made the decision to terminate plaintiff, was even aware of plaintiff's concerns involving excessive force and perjury. See *West v GMC*, 469 Mich 177, 187-188; 469 NW2d 177 (2003) (explaining that there was no evidence that the individuals conducting the investigation that led to the plaintiff's discharge, or anyone who made the discharge decision, were even aware that the plaintiff made a report to the police).

Plaintiff next argues that his work record was unblemished before his termination, which is further support for his WPA claim. Even accepting plaintiff's claim that he had an impeccable work record before Wolf's investigation, that does not automatically establish that his termination was the result of improper retaliation. See *id*. at 186 (stating that a plaintiff "must show something more than merely a coincidence in time between protected activity and adverse employment action"). A plaintiff's work record may constitute circumstantial evidence of a wrongful discharge, but "[t]he fact that a plaintiff engages in a 'protected activity' under the Whistleblowers' Protection Act does not immunize him from an otherwise legitimate, or unrelated, adverse job action." *Id*. at 186-187.

The evidence does not establish that plaintiff was acting as a Type 2 whistleblower for many of the same reasons. Plaintiff obtained the video and advocated on White's behalf as part of his duties as an investigator with the public defender's office. He was not asked by a public body to participate in an investigation of excessive force or perjury in White's case. He was not called to give testimony in court or at a deposition. See *Henry*, 234 Mich App at 413 (concluding that a police officer who provided deposition testimony in a civil case against the police department was acting as a Type 2 whistleblower). As previously discussed, Wolf's inquiry concerned the release of the video to Swanigan or the media. He was not concerned that plaintiff obtained the video, discussed its contents with others in the public defender's office, or offered to show it to public entities involved in the case. Moreover, plaintiff was not terminated because he provided the video to Swanigan. Again, Wolf decided to terminate plaintiff's employment because plaintiff lied to

Renna about giving the video to Swanigan. He was not discharged as the result of his involvement in White's defense or because he participated in an investigation concerning excessive force or perjury in White's case.

Plaintiff further argues that there are material factual disputes concerning Renna's involvement in the release of the video that preclude summary disposition. Swanigan testified in her deposition that Renna was present when she physically picked up the thumb drive containing the video. This testimony was contradicted by a memorandum prepared by Renna and submitted to Wolf, detailing Renna's investigation into plaintiff's actions. The memorandum indicated that Renna was unaware that anyone at the office directly provided the video to Swanigan. But regardless of whether Renna knew that plaintiff gave the video to Swanigan, his purported knowledge does not prove that plaintiff was engaged in a protected activity as a Type 2 whistleblower under the WPA. Renna's mere presence in the office when Swanigan picked up the video does not show that Renna was aware of plaintiff's actions. Perhaps more importantly, it does not show that plaintiff was ever asked to participate in an investigation by a public body— namely, an investigation into potential misconduct in the White or Thompson cases—which would make him a Type 2 whistleblower under the WPA. Instead, the record shows that plaintiff was terminated by his employer because he was untruthful about his actions when confronted directly about releasing videos to third parties outside of the public defender's office. The termination of his employment was clearly predicated on his lack of candor to his superiors.

Ultimately, plaintiff has not presented evidence that would allow a reasonable jury to find that he was engaged in protected activity or that there was causal connection between his participation in such activity and Wolf's decision to terminate his employment. See *West*, 469 Mich at 188. Therefore, he has failed to establish a prima facie case that his termination was the result of improper retaliation under the WPA. See *id*. Accordingly, the trial court properly granted defendants' motion for summary disposition on this basis. See *Shallal*, 455 Mich at 609.[2]

## C. PUBLIC-POLICY CLAIMS

Plaintiff next argues that his termination violated public policy. We again disagree.

The parties do not dispute that plaintiff was an at-will employee at the public defender's office. As a result, "his employment was terminable at any time and for any-or no-reason, unless that termination was contrary to public policy." *Kimmelman v Heather Down Mgt Ltd*, 278 Mich App 569, 572-573; 753 NW2d 265 (2008). This Court has explained:

> Public policy proscribing termination of at-will employment is most often used in three situations: (1) adverse treatment of employees who act in accordance with a statutory right or duty, (2) an employee's failure or refusal to violate a law in the course of employment, or (3) an employee's exercise of a right conferred by a well-

---

[2] Because we conclude that plaintiff failed to establish a prima facie case of retaliation in violation of the WPA, it is unnecessary for this Court to address whether defendant's explanation for plaintiff's termination was pretextual. See *Debano-Griffin v Lake Co Bd of Comm'rs*, 493 Mich 167, 176; 828 NW2d 634 (2013).

established legislative enactment. [*Id*. at 573 (quotation marks and citation omitted).]

In addition, if there is "a statute explicitly proscribing a particular adverse employment action, that statute is the exclusive remedy, and no other 'public policy' claim for wrongful discharge can be maintained." *Id*. In other words, if plaintiff alleges that he was terminated because of his participation in a protected activity under the WPA, his exclusive remedy is a claim under the WPA. *Id*. at 576.

In this case, plaintiff argues that his termination violated public policy because his employment with the public defender's office was conditioned on his concealment of unlawful activity. Assuming that the refusal to conceal unlawful activity is a situation in which the public-policy exception to at-will employment applies, see *id*. at 573 (explaining that courts may only derive public policy from objective sources and that the Michigan Supreme Court's "enumerated 'public policies' in this context all entail an employee exercising a right guaranteed by law, executing a duty required by law, or refraining from violating the law"), there is no evidence that plaintiff was terminated for refusing to conceal unlawful activity. As previously discussed, plaintiff was not discharged for presenting his concerns to the prosecutor, probation department, Department of Corrections, or the sentencing judge. Moreover, there was no attempt by defendants to conceal anything related to White's case because plaintiff obtained the video and Briseno demanded that the judge watch it before sentencing White. After White was sentenced, plaintiff made no further attempts to raise any allegations of wrongdoing by the sheriff's department to any public body.

A criminal defendant is entitled to his or her discovery materials and may distribute those materials to others. As a result, regardless of plaintiff's actions, criminal defendants are permitted to release materials, including videos, to the media. Media outlets may also obtain such video by submitting requests to the appropriate governmental bodies pursuant to Michigan's Freedom of Information Act, MCL 15.231 *et seq*. Accordingly, plaintiff's discharge from the public defender's office would not conceal any alleged wrongdoing by the sheriff's office. As a result, even if plaintiff's claims were not preempted by the WPA, his termination did not violate public policy. See *Kimmelman*, 278 Mich App at 577 (summarizing that this Court was unable to find "an objective source for a public policy that would make termination of an at-will employee legally wrongful under these circumstances"). The trial court properly granted summary disposition in defendants' favor. See *id*. at 576.

Affirmed.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick