*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM ANDERSON and BETTY TAYLOR,

　　　　　Plaintiffs-Appellants,

v

CITY OF DETROIT, POLICE CHIEF JAMES
CRAIG, ASSISTANT POLICE CHIEF ARNOLD
WILLIAMS, CAPTAIN OCTAVEIOUS MILES,
POLICE LIEUTENANT TONYA WILSON-
GOLFIN, and POLICE SERGEANT WINSTON
CRAIG,

　　　　　Defendants-Appellees.

UNPUBLISHED
May 23, 2024

No. 362009
Wayne Circuit Court
LC No. 18-009696-CD

---

Before: MALDONADO, P.J., and PATEL and N. P. HOOD, JJ.

PER CURIAM.

In this whistleblower protection action, plaintiffs, William Anderson and Betty Taylor, appeal by right three orders granting summary disposition in favor of defendants, the city of Detroit, Police Chief James Craig, Assistant Police Chief Arnold Williams, Captain Octaveious Miles,[1] Police Lieutenant Tonya Wilson-Golfin, and Police Sergeant Winston Craig. On appeal, plaintiffs argue that the trial court erred by granting summary disposition in favor of the city of Detroit under MCR 2.116(C)(10) because they established prima facie claims under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*., and pretext under the burden-shifting framework set forth in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). Plaintiffs also argue that the trial court erred by granting summary disposition in favor of Lieutenant Wilson-Golfin under MCR 2.116(C)(7) and Sergeant Craig under MCR 2.116(C)(7) and (10) because they engaged in conduct violative of the WPA within the 90-day statutory limitations period. We affirm.

---

[1] The city of Detroit, Police Chief James Craig, Assistant Police Chief Arnold Williams, and Captain Octaveious Miles will be referred to collectively as "the city of Detroit."

# I. BACKGROUND

This whistleblower protection action originates from plaintiffs' employment in the Detroit Police Department Gaming Division. The Gaming Division is a division within the Detroit Police Department responsible for patrolling areas immediately adjacent to Detroit's three casinos and the parking structures, businesses, and roadways between the casinos. Taylor was the timekeeper tasked with tracking and recording the attendance of other police officers in the Gaming Division. Anderson was one of multiple sergeants tasked with supervising other police officers in the division. Plaintiffs allege that they were subject to unlawful retaliation because they discovered and reported payroll fraud wherein other police officers claimed pay for hours they had not worked.

In 2015, Taylor first discovered what she believed to be payroll fraud. She claimed that Lieutenant Wilson-Golfin fabricated attendance records to obtain pay for hours she had not worked. Taylor reported the alleged payroll fraud to Sergeant Carl Clarke, who, in turn, reported it to the Detroit Police Department Internal Affairs Unit. Taylor believed that Lieutenant Wilson-Golfin held a grudge against her as a result.

In 2017, Taylor discovered what she believed to be additional instances of payroll fraud. She claimed that Lieutenant Wilson-Golfin and Sergeant Craig fabricated attendance and overtime records for their own benefit and the benefit of others. Taylor reported the alleged payroll fraud to Anderson who, in turn, reported it to two superiors: Captain Miles and Deputy Police Chief Elvin Barren. Taylor and Anderson later reported the alleged payroll fraud to internal affairs.

Plaintiffs maintained that Lieutenant Wilson-Golfin mistreated them because they reported the alleged payroll fraud. Taylor testified that Lieutenant Wilson-Golfin denied her leave requests, withheld overtime opportunities, and ignored her. Anderson testified that Lieutenant Wilson-Golfin withheld overtime opportunities and became hostile, as demonstrated by her refusal to refer to him by his name or rank and her refusal to help him resolve conflicts with subordinates.

On May 7, 2018, Officer Peggy Conover did not report for her shift in the Gaming Division. Anderson, as one of the sergeants on duty, contacted Officer Conover to discuss her absence. Officer Conover told Anderson that Sergeant Craig previously approved her request for leave. Anderson did not believe that Officer Conover's leave request was properly approved. He therefore designated Officer Conover as absent without leave.

On May 9, 2018, a series of events occurred that ultimately led to Taylor's medical leave and Anderson's temporary reassignment. In the morning or early afternoon, Sergeant Craig ordered Taylor to change Officer Conover's attendance record to reflect that she was absent with leave on May 7, 2018. Taylor refused to do so.

At approximately 12:00 p.m., Office Conover filed an internal discrimination charge against Taylor and Anderson. She alleged gender discrimination, as demonstrated by Anderson's aggressive demeanor and the inaccurate attendance record reflecting her May 7, 2018 absence without leave.

At approximately 1:18 p.m., Taylor informed Chief Craig that she had been ordered to make a fraudulent entry in the attendance log. Taylor requested a meeting to discuss the incident and other instances of alleged payroll fraud. Chief Craig agreed to meet with Taylor.

At approximately 1:37 p.m., Chief Craig cancelled the meeting with Taylor. He informed Taylor that she was named in an internal discrimination charge, and he could not meet with her until the matter was resolved. He also informed Taylor that she would be transferred out of the Gaming Division pending further investigation. Upon learning that she would be transferred, Taylor experienced what she described as an emotional breakdown and "blanked out," such that she could not recall the remainder of her conversation with Chief Craig. She went to the Detroit Police Department medical unit where she was evaluated and placed on disabled status pending further assessment.

At 3:52 p.m., Sergeant Felicia Jewell of the Detroit Police Department Human Resources Bureau advised Captain Miles that she was investigating Officer Conover's internal discrimination charge. Sergeant Jewell stated that Anderson and Taylor could not work with Officer Conover during the investigation. During his deposition, Anderson opined that Lieutenant Wilson-Golfin and Sergeant Craig encouraged Officer Conover to filed the discrimination charge, but he acknowledged that his opinion was based on "just a feeling."

The next day, Anderson was transferred to the Ninth Precinct, which covers a portion of northeast Detroit on the border with Eastpointe and Harper Woods. There, unlike the Gaming Division, Anderson supervised officers in the field, a role he described as more akin to that of a patrol officer.

The investigation into Officer Conover's discrimination charge concluded in December 2018. The city of Detroit Human Resources Bureau rescinded Anderson and Taylor's temporary departmental reassignments and concluded that they could return to their positions in the Gaming Division. In January 2019, the Human Resources Bureau issued a report on its investigation. It did not find evidence to sustain Officer Conover's allegations of sex discrimination. Anderson briefly returned to the Gaming Division in February 2019 but was transferred between that and another division twice before permanently returning to the Gaming Division in December 2019.

Taylor never returned to the Gaming Division. Her testimony about her attempts to return to work after May 9, 2018, varied. Initially, she testified that she never returned to work and, to her knowledge, was never formally transferred out of the Gaming Division, but later testified that she was reassigned to the Sex Crimes Division. She testified that she reported as directed, met her superior officer, was given an office, and was tasked with conducting intakes. She worked less than one shift before experiencing what she described as a "breakdown" and informed her superiors that she could not continue working in the Sex Crimes Division. Taylor went to the medical unit, after which she did not return to work.

On August 7, 2018, plaintiffs filed a complaint against the city of Detroit, as well as Lieutenant Wilson-Golfin and Sergeant Craig, alleging a single claim for violation of the WPA. Plaintiffs alleged that they were subject to unlawful retaliation because they discovered and

reported payroll fraud. Years of litigation followed, including a prior appeal.[2] Relevant to this appeal, the city of Detroit, Lieutenant Wilson-Golfin, and Sergeant Craig all filed motions for summary disposition. Each argued that Anderson and Taylor failed to establish genuine issues of material fact concerning adverse employment actions. Lieutenant Wilson-Golfin and Sergeant Craig also argued that plaintiffs' claims were barred by the statute of limitations.

Ultimately, following a hearing on the motions, the trial court issued three opinions granting summary disposition in favor of the city of Detroit under MCR 2.116(C)(10), Lieutenant Wilson-Golfin under MCR 2.116(C)(7), and Sergeant Craig under MCR 2.116(C)(7) and (10). Regarding Taylor, the trial court concluded that she failed to establish a prima facie WPA claim. Specifically, it found that she did not suffer an adverse employment action because she chose to take medical leave and was never formally reassigned. The trial court noted that had she been reassigned, that alone would not constitute an adverse employment action. Regarding Anderson, the trial court concluded he failed to establish a prima facie WPA claim, finding that Anderson did not suffer an adverse employment action because his temporary reassignment was merely an inconvenience or alteration of job duties. It concluded that it was unnecessary to address causation or pretext, but noted that Officer Conover's discrimination charge and the related investigation were a legitimate business reason for Anderson's reassignment and Taylor's impending reassignment. Specifically to Lieutenant Wilson-Golfin and Sergeant Craig, the trial court also found that plaintiffs did not establish that either defendant engaged in actionable conduct within the 90-day limitations period.

In granting the motions for summary disposition, the trial court disregarded affidavits that plaintiffs submitted with their responses, finding that they contradicted plaintiffs' prior deposition testimony. The trial court did not identify specific contradictions but stated that the affidavits were the only evidence capable of creating a factual dispute related to Lieutenant Wilson-Golfin's conduct.

This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews de novo the grant or denial of a motion for summary disposition. *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010). MCR 2.116(C)(7) "permits summary disposition where the claim is barred by an applicable statute of limitations." *Id*. "In reviewing a motion for summary disposition under MCR 2.116(C)(7), a court considers the affidavits, pleadings, and other documentary evidence presented by the parties and accepts the plaintiff's well-pleaded allegations as true, except those contradicted by documentary evidence." *McLean v Dearborn*, 302 Mich App 68, 72-73; 836 NW2d 916 (2013). The evidence submitted must be considered in the light most favorable to the nonmoving party. *Id*. at 73. "If there is no factual dispute, whether a plaintiff's claim is barred under the applicable statute of limitations is a

---

[2] *Anderson v Detroit*, unpublished per curiam opinion of the Court of Appeals, issued February 4, 2021 (Docket No. 351124) (reversing the trial court order dismissing plaintiffs' complaint as a discovery sanction).

matter of law for the court to determine." *Kincaid v Cardwell*, 300 Mich App 513, 523; 834 NW2d 122 (2013).

A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis omitted). In considering a motion under MCR 2.116(C)(10), a court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id.* Such a motion "may only be granted when there is no genuine issue of material fact." *Id.* "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id.* (quotation marks and citation omitted).

### III. LAW AND ANALYSIS

The WPA prohibits an employer from taking adverse employment action against an employee who reports, or is about to report, a violation or suspected violation of law to a public body. MCL 15.362; *Pace v Edel-Harrelson*, 499 Mich 1, 6; 878 NW2d 784 (2016). To establish a prima facie case under the WPA, the plaintiff must show that "(1) the plaintiff was engaged in protected activity as defined by the act, (2) the defendant took an adverse employment action against the plaintiff, and (3) 'a causal connection exists between the protected activity' and the adverse employment action." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013), quoting *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 399; 572 NW2d 210 (1998).

"Absent direct evidence of retaliation, a plaintiff must rely on indirect evidence of his or her employer's unlawful motivations to show that a causal link exists between the whistleblowing act and the employer's adverse employment action." *Debano-Griffin*, 493 Mich at 176, citing *Hazle v Ford Motor Co*, 464 Mich 456, 462-463; 628 NW2d 515 (2001). "A plaintiff may present a rebuttable prima facie case on the basis of proofs from which a fact[-]finder could infer that the plaintiff was the victim of unlawful retaliation." *Debano-Griffin*, 493 Mich at 176, citing *Hazle*, 464 Mich at 462 (cleaned up). Once a plaintiff establishes a prima facie case, a presumption of retaliation arises. *Id.* "The employer, however, may be entitled to summary disposition if it offers a legitimate reason for its action and the plaintiff fails to show that a reasonable fact-finder could still conclude that the plaintiff's protected activity was a 'motivating factor' for the employer's adverse action." *Id.*, quoting *Hazle*, 464 Mich at 464-465.

### A. THE CITY OF DETROIT

The trial court did not err when it granted summary disposition in favor of the city of Detroit. Plaintiffs failed to establish prima facie claims under the WPA. Even if they had done so, they failed to establish that the city of Detroit's proffered reason for its actions was a pretext for unlawful retaliation.

#### 1. THE TRIAL COURT PROPERLY GRANTED SUMMARY DISPOSITION OF ANDERSON'S WPA CLAIM UNDER MCR 2.116(C)(10)

The parties do not dispute that Anderson engaged in protected activity as defined under the WPA. We agree. The WPA provides protection for two types of whistleblowers: "(1) those who report, or are about to report, violations of law, regulation, or rule to a public body, and (2) those who are requested by a public body to participate in an investigation held by that public body or

-5-

in a court action." *Shaw v Ecorse*, 283 Mich App 1, 10; 770 NW2d 31 (2009), quoting *Henry v Detroit*, 234 Mich App 405, 409; 770 NW2d 31 (2009). The WPA defines "public body" to include cities, law enforcement agencies, and any employees thereof. MCL 15.361(d)(*iii*) and (*v*). For purposes of the WPA, "[i]t does not matter if the public body to which the suspected violations were reported was also the employee's employer." *Brown v Mayor of Detroit*, 478 Mich 589, 595; 734 NW2d 514 (2007). Anderson reported suspected payroll fraud to his superiors in the Detroit Police Department and others in internal affairs, both of which fall within the WPA's definition of a "public body" as employees of a law enforcement agency. Therefore, at a minimum, there was a genuine issue of material fact concerning Anderson's engagement in protected activity as defined under the WPA.

There was also a genuine issue of material fact regarding whether Anderson suffered an adverse employment action. An adverse employment action occurs when an employee is "discharged, threatened, or otherwise discriminated against regarding his or her compensation, terms, conditions, location, or privileges of employment." *Wurtz v Beecher Metro Dist*, 495 Mich 242, 251; 848 NW2d 121 (2014). See also MCL 15.362. "In order to be actionable, an employment action must be materially adverse to the employee—that is, it must be more than a mere inconvenience or minor alteration of job responsibilities." *Chen v Wayne State Univ*, 284 Mich App 172, 201; 771 NW2d 820 (2009), citing *Meyer v Center Line*, 242 Mich App 560, 569; 619 NW2d 182 (2000). Moreover, "there must be an objective basis for demonstrating that the employment action is adverse because a plaintiff's subjective impressions are not controlling." *Chen*, 284 Mich App at 201-202, citing *Wilcoxon v Minn Mining & Mfg Co*, 235 Mich App 347, 364; 597 NW2d 250 (1999). Materially adverse employment actions are akin to "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Chen*, 284 Mich App at 202, quoting *Wilcoxon*, 235 Mich App at 363 (quotation marks omitted).

Anderson was temporarily transferred from the Gaming Division to the Ninth Precinct, where he retained his rank, rate of pay, and supervisory duties. Although Anderson characterized the Ninth Precinct as the worst precinct in the city of Detroit because of its relative size and danger, he did not present objective evidence supporting his characterization, and his subjective impressions are not controlling. *Chen*, 284 Mich App at 201-202. Regardless, Anderson's transfer to the Ninth Precinct resulted in more than a minor alteration of his job responsibilities. Unlike the Gaming Division, Anderson frequently supervised police officers in the field while working in the Ninth Precinct, resulting in responsibilities more akin to those of a patrol officer. He also supervised police officers independently, meaning that he effectively conducted patrols alone. Anderson also testified that he lost overtime opportunities while working in the Ninth Precinct. His testimony was supported by overtime records, which reflected that his average overtime hours decreased beginning in May 2018—the same month in which he was transferred to the Ninth Precinct. Taken together, this evidence established a genuine issue of material fact regarding whether Anderson suffered an adverse employment action.

Although Anderson established the first two prongs of his prima facie claim, he failed to establish a genuine issue of material fact regarding a causal connection between his protected activity and the adverse employment action. "To establish causation using circumstantial evidence, the circumstantial proof must facilitate reasonable inferences of causation, not mere

-6-

speculation." *Shaw*, 283 Mich App at 14-15, quoting *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994) (quotation marks omitted). "Speculation or mere conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference." *Shaw*, 283 Mich App at 15, quoting *Skinner*, 445 Mich at 164 (quotation marks omitted).

Anderson first reported the alleged payroll fraud in August 2017. Yet, he was not transferred to the Ninth Precinct until May 10, 2018—the day after Officer Conover named him in a charge of discrimination and Sergeant Jewell instructed that he was barred from supervising Officer Conover during her investigation. Anderson was not directly involved in Taylor's attempt to report the alleged payroll fraud on May 9, 2018. Even if he had been, "[s]omething more than a temporal connection between protected conduct and an adverse employment action is required to show causation when retaliation is claimed." *Debano-Griffin*, 493 Mich at 177, quoting *West v General Motors Corp*, 469 Mich 177, 186; 828 NW2d 634 (2013) (quotation marks omitted).

Anderson suggests that his delay in returning to the Gaming Division after the resolution of Officer Conover's discrimination charge demonstrates a causal link between his protected activity and the adverse employment action. He specifically points to the fact that Sergeant Jewell advised that Anderson could return to his position in the Gaming Division on December 12, 2018. Anderson returned to the Gaming Division for one day in February 2019 but was then transferred between the Gaming Division and the Downtown Services Division twice before permanently returning to the Gaming Division in or around December 2019.

Anderson advances a speculative causation theory related to his delay in permanently returning to the Gaming Division. Indeed, Police Captain Franklin Hayes told Anderson that his services were needed in the Downtown Services Division, where he had previously filled in to accommodate personnel needs. Anderson returned to the Gaming Division permanently after advising his superior that he was not willing to stay in the Downtown Services Division on a long-term basis. While Anderson's causation theory provides one explanation for his delay in returning the Gaming Division, it is not reasonably deducible from the known facts. Thus, Anderson has failed to establish the third prong of his prima facie claim: causation.

Even if Anderson had established a prima facie WPA claim, he failed to demonstrate that the proffered explanation for his temporary departmental transfer was a pretext for unlawful retaliation. There are three ways a plaintiff can establish that an employer's legitimate, nondiscriminatory reason for taking adverse employment action was a pretext for unlawful retaliation: "(1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision." *Debano-Griffin*, 493 Mich at 180, quoting *Dubey v Stroh Brewery Co*, 185 Mich App 561, 565-566; 462 NW2d 758 (1990).

The city of Detroit maintains that Anderson was transferred to the Ninth Precinct because Officer Conover filed a discrimination charge against him. Anderson was transferred to the Ninth Precinct on May 10, 2018—the day after Officer Conover named him in a discrimination charge and Sergeant Jewell instructed that he was barred from supervising Officer Conover during her investigation. Thus, the city of Detroit's proffered explanation had a basis in fact.

Anderson suggests that his temporary departmental transfer was not actually motivated by Officer Conover's discrimination charge because he was delayed in returning to the Gaming Division after it was resolved, and Sergeant Jewell did not specifically mandate his transfer during her investigation. But Anderson's causation theory is speculative. Again, Captain Hayes told Anderson that his services were needed in the Downtown Services Division, where he had previously filled in to accommodate personnel needs. He returned to the Gaming Division permanently after advising his superiors that he was not willing to stay in the Downtown Services Division on a long-term basis, and he was ultimately promoted to master sergeant after doing so. While Anderson's causation theory provides one explanation for his delay in returning the Gaming Division, it is not reasonably deducible from the known facts. Moreover, Anderson failed to present any evidence that he could have remained in the Gaming Division without supervising Officer Conover. For these reasons, Anderson failed to demonstrate that the proffered explanation for his temporary departmental transfer was a pretext for unlawful retaliation. His WPA claim failed as a matter of law, and the trial court did not err when it granted summary disposition in favor of the city of Detroit under MCR 2.116(C)(10).

## 2. THE TRIAL COURT PROPERLY GRANTED SUMMARY DISPOSITION OF TAYLOR'S WPA UNDER MCR 2.116(C)(10)

Like Anderson, the parties do not dispute that Taylor engaged in protected activity as defined under the WPA, and we agree. Again, the WPA provides protection for two types of whistleblowers: "(1) those who report, or are about to report, violations of law, regulation, or rule to a public body, and (2) those who are requested by a public body to participate in an investigation held by that public body or in a court action." *Shaw*, 283 Mich App at 10, quoting *Henry*, 234 Mich App at 409. The WPA defines "public body" to include cities, law enforcement agencies, and any employees thereof. MCL 15.361(d)(*iii*) and (*v*). For purposes of the WPA, "[i]t does not matter if the public body to which the suspected violations were reported was also the employee's employer." *Brown*, 478 Mich at, 595. Like Anderson, Taylor reported the suspected payroll fraud to her superiors in the Detroit Police Department and others in internal affairs, both of which are public bodies, thereby satisfying the first element, engaging in protected activity.

Yet, Taylor failed to establish a genuine issue of material fact regarding whether she suffered an adverse employment action. Taylor began medical leave on May 9, 2018, after experiencing what she described as an emotional breakdown and electing to report to the Detroit Police Department medical unit. There was conflicting evidence regarding Taylor's formal transfer out of the Gaming Division. Initially, Taylor testified that she never returned to work after May 9, 2018. Later, Taylor testified that she was transferred to the Sex Crimes Division, where she was tasked with conducting intakes. Taylor stated that she was able to tolerate less than one day in the Sex Crimes Division before experiencing an emotional breakdown resulting in medical leave. Taylor's latter version of events is supported by Sergeant Jewell's December 12, 2018 e-mail rescinding her temporary departmental reassignment.

Accepting either version of events as true, Taylor failed to establish a genuine issue of material fact regarding whether she suffered an adverse employment action. Regarding the former version of events, Taylor elected to take medical leave after experiencing what she described as an emotional breakdown. Taylor was not forced to take medical leave or prevented from returning to work once she did so. In fact, Taylor maintained that her emotional breakdown was legitimate

and ongoing throughout multiple medical evaluations. Regarding the latter version of events, Taylor worked in the Sex Crimes Division for less than one day. There was no evidence that she had a lesser title, wage, or benefit package. Although Taylor attested that she did not have a desk or gun, she failed to present any evidence that she would be deprived of such if she remained in the role. While Taylor may have preferred her role in the Gaming Division, her subjective impressions are not controlling. *Chen*, 284 Mich App at 201-202. Thus, she failed to establish a genuine issue of material fact regarding whether she suffered an adverse employment action.

Taylor also failed to establish a genuine issue of material fact regarding the third prong of her prima facie claim: causation. Taylor advances a speculative theory of causation related to her transfer out of the Gaming Division. Taylor attempted to report alleged payroll fraud to Chief Craig on May 9, 2018. That same day, Officer Conover named her in a charge of discrimination. Consequently, Sergeant Jewell instructed that Taylor was barred from working with Officer Conover during her investigation. Although Chief Craig informed Taylor of her impending transfer before he received instructions from Sergeant Jewell, Chief Craig knew of the discrimination charge and relied on it as the basis for Taylor's impending transfer. Other than temporal proximity, which alone is insufficient to establish causation, *Debano-Griffin*, 493 Mich at 177, quoting *West*, 469 Mich at 186 (quotation marks omitted), Taylor failed to present any evidence that her impending transfer was causally related to her attempt to report alleged payroll fraud.

Taylor suggests that her delay in returning to the Gaming Division after the resolution of Officer Conover's discrimination charge demonstrates a causal connection between her protected activity and the alleged adverse employment action. Namely, Sergeant Jewell advised that Taylor could return to her position in the Gaming Division on December 12, 2018, but she was not asked to return. Taylor was on medical leave and maintained that her emotional breakdown was legitimate and ongoing throughout multiple medical evaluations. She did not present any evidence that she attempted to return to her position in the Gaming Division and was prevented from doing so. Taylor therefore failed to establish a genuine issue of material fact regarding the third prong of her prima facie claim: causation.

Even if Taylor had established a prima facie WPA claim, she failed to demonstrate that the proffered explanation for her impending departmental transfer was a pretext for unlawful retaliation. There are three ways a plaintiff can establish that an employer's legitimate, nondiscriminatory reason for taking adverse employment action was a pretext for unlawful retaliation: "(1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision." *Debano-Griffin*, 493 Mich at 180, quoting *Dubey*, 185 Mich App at 565-566.

The city of Detroit maintained that Taylor's impending transfer was caused by Officer Conover's discrimination charge. Chief Craig informed Taylor of her impending transfer on May 9, 2018—the same day that Officer Conover named her in the discrimination charge. Thus, the city of Detroit's proffered explanation had a basis in fact.

Taylor suggests that her impending transfer was not actually motivated by the discrimination charge because she was not asked to return to the Gaming Division after its

resolution, and Sergeant Jewell did not specifically mandate her transfer during her investigation. But Taylor's theory is speculative. Again, Taylor was on medical leave and maintained that her emotional breakdown was legitimate and ongoing throughout multiple medical evaluations. Taylor effectively maintained that her emotional state prevented her from returning to work. Furthermore, Taylor failed to present any evidence that she, as the sole timekeeper, could have remained in the Gaming Division without working with Officer Conover. Accordingly, Taylor failed to demonstrate that the proffered explanation for her impending transfer was a pretext for unlawful retaliation. Her WPA claim failed as a matter of law, and the trial court did not err when it granted summary disposition in favor of the city of Detroit under MCR 2.116(C)(10).

## B. LIEUTENANT WILSON-GOLFIN

The trial court did not err when it granted summary disposition in favor of Lieutenant Wilson-Golfin. Namely, plaintiffs failed to establish genuine issues of material fact regarding Lieutenant Wilson-Golfin's role in the city of Detroit's alleged adverse employment actions within the statutory limitations period.

Plaintiffs initially argue that the trial court erred when it declined to consider their affidavits because they did not contradict their prior deposition testimony. With the exception of a single aspect of Taylor's affidavit, plaintiffs fail to specifically identify the aspects of their affidavits that the trial court should have considered as consistent with their deposition testimony. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Citizens Ins Co of America v Livingston Co Rd Comm*, 343 Mich App 354, 372; 997 NW2d 237 (2022), quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Accordingly, our analysis is limited to the aspect of Taylor's affidavit that plaintiffs specifically identify as consistent with her deposition testimony: Taylor attestation that she overheard Lieutenant Wilson-Golfin instruct Sergeant Craig to direct her to change Officer Conover's attendance record.

"It is well established that a party or witness may not manufacture a question of material fact by directly contradicting the person's own deposition testimony with an affidavit." *Bakeman v Citizens Ins Co of the Midwest*, 344 Mich App 66, 76-77; 998 NW2d 743 (2022), citing *Dykes v William Beaumont Hosp*, 246 Mich App 471, 480-482; 633 NW2d 440 (2001). A party or witness may, however, "provide an affidavit to explain, clarify, or expand on deposition testimony, especially when the deposition testimony was not unequivocal." *Id*. at 77, citing *Wallad v Access BIDCO, Inc*, 236 Mich App 303, 312; 600 NW2d 664 (1999).

In its order granting summary disposition in favor of Lieutenant Wilson-Golfin, the trial court determined that plaintiffs' affidavits contradicted their prior deposition testimony. However, it did not identify any specific contradiction that rendered the affidavits ineffectual. A close reading of Taylor's affidavit reveals that the portion identified by plaintiffs supplements, rather than contradicts, her deposition testimony, and therefore, the trial court should have considered it.

Taylor testified that Sergeant Craig directed her to commit payroll fraud on May 9, 2018, when he ordered her to change Officer Conover's attendance record to reflect her May 7, 2018 absence with leave. Taylor did not address Lieutenant Wilson-Golfin's role in Sergeant Craig's

order, if any. In her subsequent affidavit, Taylor attested that she overheard Lieutenant Wilson-Golfin instruct Sergeant Craig to act. Evidence related to Lieutenant Wilson-Golfin's purported attempt to implicate Taylor in payroll fraud supplements, rather than contradicts, her deposition testimony. The trial court therefore erred by disregarding such evidence.

Regardless, the trial court reached the correct result when it granted Lieutenant Wilson-Golfin's motion for summary disposition under MCR 2.116(C)(7). WPA claims are subject to a 90-day statute of limitations, meaning that WPA claims must be brought within 90 days of an alleged WPA violation. MCL 15.363(1). Plaintiffs filed their complaint on August 7, 2018. Thus, to be actionable, any alleged violation of the WPA must have occurred on or after May 9, 2018.

Taylor attested that she overheard Lieutenant Wilson-Golfin instruct Sergeant Craig to order that Officer Conover's attendance record be changed to reflect her May 7, 2018 absence with leave in an attempt to implicate Taylor in alleged payroll fraud. This is the only conduct related to Lieutenant Wilson-Golfin that plaintiffs allege fell within the limitations period. But standing alone, this alleged conduct did not amount to a materially adverse employment action. Lieutenant Wilson-Golfin did not discharge or threaten to discharge plaintiffs, nor did her alleged conduct impact the terms, conditions, location, or privileges of plaintiffs' employment. Importantly, Anderson acknowledged that Lieutenant Wilson-Golfin did not have the authority to transfer police officers out of the Gaming Division. Thus, plaintiffs failed to present evidence that Lieutenant Wilson-Golfin caused their transfer or impending transfer out of the Gaming Division. The trial court did not err when it granted summary disposition in favor of Lieutenant Wilson-Golfin under MCR 2.116(C)(7).

## C. SERGEANT CRAIG

The trial court did not err when it granted summary disposition in favor of Sergeant Craig. Plaintiffs failed to establish genuine issues of material fact regarding Sergeant Craig's role in the city of Detroit's alleged adverse employment actions within the statutory limitations period.

WPA claims are subject to a 90-day statute of limitations, meaning that WPA claims must be brought within 90 days of an alleged WPA violation. MCL 15.363(1). Plaintiffs filed their complaint on August 7, 2018. Therefore, to be actionable, any alleged violation of the WPA must have occurred on or after May 9, 2018.

Taylor testified that Sergeant Craig directed her to commit payroll fraud on May 9, 2018, when he ordered her to change Officer Conover's attendance record to reflect her May 7, 2018 absence with leave. When Taylor refused to do so, Sergeant Craig accused her of disobeying a direct order and slammed her door. This is the only conduct that plaintiffs allege Sergeant Craig committed within the limitations period. But without more, this alleged conduct did not amount to a materially adverse employment action. He did not discharge or threaten to discharge plaintiffs, nor did his alleged conduct impact the terms, conditions, location, or privileges of plaintiffs' employment. Plaintiffs failed to present evidence that Sergeant Craig had the authority to transfer police officers out of the Gaming Division. Plaintiffs therefore failed to present evidence that Sergeant Craig caused their transfer or impending transfer out of the Gaming Division. The trial court did not err when it granted summary disposition in favor of Sergeant Craig under MCR 2.116(C)(7) and (10).

We affirm.

/s/ Allie Greenleaf Maldonado
/s/ Sima G. Patel
/s/ Noah P. Hood