Per Curiam.
 

 Defendants appeal by right the verdict in favor of plaintiff following a jury trial in this action
 
 *407
 
 brought under the Whistleblower’s Protection Act (WPA), MCL 15.361
 
 et seq.\
 
 MSA 17.428(1)
 
 et seq.
 
 The jury awarded plaintiff damages totaling $1.08 million. We affirm.
 

 Plaintiff was a commander in the city of Detroit Police Department. After the highly publicized death of Malice Green, the Detroit Police Department formed a department board of review whose function included overseeing the investigation of the death of Malice Green and recommending whether any officers involved should be criminally charged. Plaintiff was the chairman of the board of review. It is undisputed that there are departmental rules that define the role and duties of the board of review and that defendant Detroit Police Chief Isaiah McKinnon gave orders effectively precluding the Malice Green board of review from performing its obligations. As a result of the board of review’s inability to perform its duties, some officers innocent of any wrongdoing in the death of Malice Green were falsely accused and denied important rights by the police department. In a subsequent civil lawsuit filed by Robert Lessnau, one of the officers acquitted of killing Malice Green (hereinafter referred to as the Lessnau suit), plaintiff gave a deposition wherein he testified that the department rules concerning the board of review were violated and the board of review was not allowed to perform its duties. In an unrelated matter, plaintiff also testified before the Michigan Employment Relations Commission (merc) regarding the formation of a union by police inspectors and commanders.
 

 Less than four months after plaintiff’s deposition in the Lessnau suit and less than one month following his testimony before the merc, plaintiff was given the
 
 *408
 
 choice of taking an early retirement or a demotion. Plaintiff claims that his forced retirement was in retaliation for his Lessnau deposition testimony and his merc testimony. Defendants claim that plaintiff was being demoted because of poor job performance and rely on surveillance of plaintiff, conducted by both the police department and a local news organization, that shows plaintiff out of his precinct during the middle of several work days.
 

 Plaintiff filed the instant suit, alleging several counts in his complaint. Most of the counts were dismissed before trial, but trial proceeded with regard to plaintiffs WPA claim. The jury found that defendants city of Detroit and Police Chief McKinnon retaliated against plaintiff for his deposition testimony in the Lessnau suit. The jury awarded damages totaling $1.08 million.
 

 i
 

 First, defendants claim that the trial court incorrectly ruled that plaintiff presented a prima facie violation of the WPA. We disagree.
 

 The WPA provides:
 

 An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee’s compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or
 
 *409
 
 inquiry held by that public body, or a court action. [MCL 15.362; MSA 17.428(2)].
 

 The WPA is a remedial statute and must be liberally construed in favor of the persons it was intended to benefit.
 
 Phinney v Perlmutter,
 
 222 Mich App 513, 555; 564 NW2d 532 (1997). The underlying purpose of the act is the protection of the public.
 
 Dolan v Continental Airlines/Continental Express,
 
 454 Mich 373, 378; 563 NW2d 23 (1997). “The act meets this objective by protecting the whistleblowing employee and by removing barriers that may interdict employee efforts to report violations or suspected violations of the law.”
 
 Id.
 
 at 378-379. “Without employees who are willing to risk adverse employment consequences as a result of whistleblowing activities, the public would remain unaware of large-scale and potentially dangerous abuses.”
 
 Id.
 
 at 379.
 

 To establish a prima facie violation of the WPA, a plaintiff must show (1) that the plaintiff was engaged in a protected activity as defined by the WPA, (2) that the plaintiff was discharged, and (3) a causal connection existed between the protected activity and the discharge.
 
 Shallal v Catholic Social Services,
 
 455 Mich 604, 610; 566 NW2d 571 (1997). The plain language of the statute provides protection for two types of “whistleblowers”: (1) those who report, or are about to report, violations of law, regulation, or rule to a public body, and (2) those who are requested by a public body to participate in an investigation held by that public body or in a court action. See
 
 Chandler v Dowell Schlumberger, Inc,
 
 214 Mich App 111, 125; 542 NW2d 310 (1995) (D.E. Shelton, J., dissenting), aff’d 456 Mich 395; 572 NW2d 210 (1998); Ruga & Kopka, Wrongful Discharge and Employment Discrim
 
 *410
 
 ination, § 2.24, p 50. On the basis of the plain language of the WPA, we inteipret a type 1 whistleblower to be one who, on his own initiative, takes it upon himself to communicate the employer’s wrongful conduct to a public body in an attempt to bring the, as yet hidden, violation to light to remedy the situation or harm done by the violation. In other words, we see type 1 whistleblowers as initiators, as opposed to type 2 whistleblowers who participate in a previously initiated investigation or hearing at the behest of a public body. If a plaintiff falls under either category, then that plaintiff is engaged in a “protected activity” for purposes of presenting a prima facie case.
 

 In the case at bar, defendants’ first claim is that plaintiff’s reporting a violation of internal police procedures is not a protected activity because internal procedures are not a “law, regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States.” We disagree.
 

 Plaintiff testified in a deposition that the internal procedures governing the board of review in the death of Malice Green were not followed. The board of police commissioners, pursuant to the city charter, drafted the police manual that set forth the procedures governing the board of review. Therefore, we believe that the board of review procedures are rules or regulations promulgated pursuant to the law of the city of Detroit, which is a subdivision of this state.
 

 Next, defendants claim that plaintiff was not engaged in a protected activity because his deposition testimony in the Lessnau suit was not a report to a public body. We agree but find that this conclusion does not mandate reversal.
 

 
 *411
 
 Pursuant to MCL 15.361(d); MSA 17.428(l)(d), “[p]ublic body” includes all of the following:
 

 (i) a state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of state government.
 

 (ii) an agency, board, commission, council, member, or employee of the legislative branch of state government.
 

 (iii) a county, city, township, village, intercounty, intercity, or regional governing body, a council, school district, special district, or municipal corporation, or a board, department, commission, council, agency, or any member or employee thereof.
 

 (iv) any other body which is created by state or local authority or which is primarily funded by or through state or local authority, or any member or employee thereof.
 

 (v) a law enforcement agency or any member or employee of a law enforcement agency.
 

 (vi) the judiciary and any member or employee of the judiciary.
 

 In the case at bar, the subject of plaintiff’s testimony in the Lessnau suit was defendants’ violation of departmental regulations, and, as previously indicated, we conclude that reporting such violations to a public body is a protected activity under the WPA. Even with a broad statutory construction, however, we fail to see how this testimony was a report to a public body. Plaintiff took no initiative to communicate the violation to a public body, i.e., he was not an initiator. Plaintiff was deposed in a private civil suit previously filed by a fellow officer. Under these facts we cannot conclude this testimony to have been a report to a public body for wpa purposes. Nonetheless, our conclusion simply means that plaintiff is not a type 1 whistleblower.
 

 
 *412
 
 It is unclear whether the jury found that plaintiff was a type 1 whistleblower or a type 2 whistleblower. Because the trial court simply read the statute to the jury as an instruction, the jury was instructed with regard to both types. In our opinion, plaintiff has presented a prima facie case of a violation of the wpa as a type 2 whistleblower.
 

 As indicated, a type 2 whistleblower is an employee who is “requested by a public body to participate in ... a court action.” In the case at bar, by giving a deposition in a civil case, plaintiff clearly participated in a “court action.” The more difficult question is whether plaintiff was requested by a “public body” to do so. Reading the statute literally, we conclude that plaintiff can be a type 2 whistleblower for several reasons: first, Lessnau, a fellow law enforcement officer, requested plaintiffs participation in the court action; and second, a law enforcement agency qualifies as a “public body.” Lessnau filed suit against the city and the Detroit Police Department to expose and remedy alleged improprieties in the investigation into whether he was involved in the death of Malice Green. Plaintiff testified on behalf of Officer Lessnau, who is obviously an employee of a law enforcement agency, one of the qualifying “public bodies” as set forth under MCL 15.361(d)(v); MSA 17.428(l)(d)(v).
 

 Moreover, deposition testimony is part of the trial or discovery process in civil litigation and is governed by the Michigan Court Rules. See generally MCR 2.300. MCR 1.103 specifically states that “[t]he Michigan Court Rules govern practice and procedures in all courts established by the constitution and laws of the State of Michigan.” MCR 2.305(A), entitled “Subpoena for Taking Deposition,” also provides that a party may
 
 *413
 
 subpoena another to give deposition testimony after suit has been commenced. A subpoena is a court-ordered command for the person to whom it is directed to attend and give testimony. MCR 2.306(3). Thus, a deponent who (a) is an employee of the entity whose conduct is at issue, (b) has provided testimony by a deposition and, thereby, has “participated in a court proceeding”, and (c) would be subject to a court-ordered subpoena to compel his attendance in any event, meets the definition of a type 2 whistleblower. Specifically, in the instant case, plaintiff, a coemployee of officer Lessnau in the Detroit Police Department, had no choice but to give deposition testimony in the Lessnau case. Consequently, we are constrained to conclude that providing testimony in Lessnau’s civil case, which involved both plaintiff’s and Lessnau’s employer and was pending in a state circuit court, meets the requirements for a type 2 whistleblower who “is requested by a public body to participate in a . . . court action.” Indeed, as a deponent, plaintiff’s attendance and testimony were compelled, which is certainly a higher standard than requested. We therefore find plaintiff’s testimony to be an activity protected by the wpa.
 
 [1]
 

 
 *414
 
 Last, defendants claim there was no evidence of a causal connection between plaintiffs deposition testimony and his demotion or forced retirement. We disagree.
 

 Plaintiff was a twenty-eight-year veteran of the Detroit Police Department who had received several honors and citations. Before this incident, he had never been reprimanded and no negative action was taken against him while he was an employee of the police department. Plaintiff testified that following his testimony in the Lessnau civil suit, plaintiff was told that the chief of police was upset and believed that plaintiffs testimony was going to cost the city a lot of money. Plaintiff also testified that following his testimony in the Lessnau suit, Police Chief McKinnon treated plaintiff differently than he had in the past. Less than four months after plaintiffs testimony, plaintiff was forced to choose between a demotion or retirement. It is reasonable to conclude that plaintiff was given these unpalatable choices because he provided testimony in the Lessnau case. Whether the deposition or plaintiffs job performance was the real reason for defendants’ action against plaintiff was a question properly left to the jury. Therefore, we find that plaintiff presented a prima facie violation of the WPA, and the issue was properly submitted to the jury.
 

 n
 

 Next, defendants claim that the trial court abused its discretion by denying their motion for remittitur. We disagree.
 

 In determining a motion for remittitur, the trial court must decide whether the jury award was supported by the evidence.
 
 Weiss v Hodge (After
 
 
 *415
 

 Remand),
 
 223 Mich App 620, 637; 567 NW2d 468 (1997). The trial court is in a superior position to decide the motion because of its ability to view the evidence and evaluate the credibility of the witnesses.
 
 Id.
 
 This Court reviews a trial court’s decision to deny a motion for remittitur for an abuse of discretion.
 
 Szymanski v Brown,
 
 221 Mich App 423, 431; 562 NW2d 212 (1997). Where an appellant points to nothing but the size of the verdict to support his argument, this Court will defer to the trial court’s decision.
 
 Weiss, supra.
 

 At trial, plaintiff presented expert testimony that the value of his lost wages and benefits equaled $1,096,457. Plaintiff testified that he suffered embarrassment, depression, and sleep disorders resulting from his forced retirement. He also testified that he sought psychological counseling for his problems. The jury awarded plaintiff economic damages of $900,000 against the city and $90,000 against the chief of police. Plaintiff was also awarded noneconomic damages of $20,000 against the city, and $70,000 against the chief of police.
 

 On appeal, defendants simply challenge the size of the noneconomic damages award and make no specific arguments. Therefore, we defer to the trial court’s decision. In regard to the economic damage award, the only specific argument defendants make is that there were no guarantees plaintiff would have been employed until the age of seventy. Our Supreme Court has stated that the measure of damages for the loss of future earnings where the time element is uncertain is based on the sound judgment of the trier of fact and, if reasonable, will not be disturbed.
 
 Vink v House,
 
 336 Mich 292, 297; 57 NW2d 887 (1953). In
 
 *416
 
 the case at bar, plaintiff testified that he wanted to work until the age of seventy, and there was other testimony indicating that other members of the police department worked in excess of thirty-five years and attained the age of seventy. As a result, the trial testimony supports the economic damage award, which appears to be reasonable. We therefore find no abuse of discretion in the denial of defendants’ motion for remittitur.
 

 m
 

 Plaintiff also raised several claims on cross appeal.
 
 [2]
 
 In view of our resolution of the preceding issues, we need not address plaintiff’s claims raised on cross appeal.
 

 We affirm.
 

 [1]
 

 As discussed, the purpose of the wpa is to protect the public.
 
 Dolan, supra.
 
 It could be argued that the Lessnau suit was nothing but an attempt to collect damages for a wrong against an individual and any benefit to the public was tangential to Lessnau’s individual goal of receiving compensation for his improper treatment. We are of the opinion, however, that our holding is consistent with the wpa’s public safety purpose in that defendants’ treatment of officers like Lessnau who were innocent of wrongdoing in the death of Malice Green essentially shows a disregard of regulation in a rush to judgment. Any propensity by a member of a police department to engage in such conduct is a matter of public concern or creates a potentially dangerous situation for the public. Plaintiff’s testimony in the Lessnau suit helped create public awareness of the situation.
 

 [2]
 

 As an initial matter, on the basis of the damages awarded to plaintiff for his retaliatory discharge (i.e., lost wages, benefits, and noneconomic damages), we find that plaintiff has been fully compensated and no further proceedings regarding any different theories of recovery are warranted. Therefore, even if the trial court improperly dismissed any of plaintiff’s other claims, because he has been fully compensated, we find no error. It would be against public policy to allow plaintiff double damages.