*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TAMMY MCNEILL-MARKS,

      Plaintiff-Appellant,

v

MIDMICHIGAN MEDICAL CENTER-GRATIOT,

      Defendant-Appellee.

UNPUBLISHED
February 10, 2022

No. 348987
Gratiot Circuit Court
LC No. 14-011876-NZ

ON REMAND

Before: BOONSTRA, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

Defendant sought leave to appeal this Court's May 21, 2020 judgment, and in lieu of granting leave, our Supreme Court reversed and remanded for consideration of the issue whether plaintiff's communication to her attorney satisfied the reporting requirement of MCL 15.362.[1] For the reasons stated in this opinion, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

We incorporate by reference the factual and procedural background set forth in this Court's previous opinions, *McNeill-Marks v MidMichigan Medical Center-Gratiot (McNeill-Marks I)*, 316 Mich App 1; 891 NW2d 528 (2016), and *McNeill-Marks v MidMichigan Medical Center-Gratiot (McNeill-Marks II)*, unpublished opinion of the Court of Appeals issued May 21, 2020 (Docket No. 348987).

In *McNeill-Marks I*, this Court reviewed de novo the trial court's summary disposition ruling in favor of MidMichigan Medical Center-Gratiot (MMCG) and reversed in part and remanded in part in *McNeill-Marks I*, 316 Mich App 1. MMCG sought leave to appeal to our

---

[1] *McNeill-Marks v MidMichigan Medical Center-Gratiot*, ___ Mich ___; 964 NW2d 33 (2021).

Supreme Court which denied leave.[2]  MMCG moved for reconsideration but our Supreme Court denied the motion.[3]  Hence, the case was remanded to the trial court for further proceedings. MMCG moved again for summary disposition under MCR 2.116(C)(10), this time on the ground that plaintiff's communication with her attorney did not constitute a "report" under the Whistleblower Protection Act (WPA), MCL 15.361 *et seq.*  Plaintiff opposed MMCG's motion by arguing that the law-of-the-case doctrine required the trial court to deny the motion because this Court's binding published opinion held that she made a report to a public body and that the record evidence sufficed to establish that she engaged in protected activity and had established her prima facie case under the WPA.  At the hearing, the trial court agreed with MMCG that plaintiff's communication to her attorney did not fall within the meaning of a "report" under the WPA. Therefore, the trial court granted MMCG's motion.

Plaintiff appealed and argued as she did in the trial court.  The current panel of this Court again reviewed de novo the case and analyzed *McNeill-Marks I*.  The majority of this panel agreed that the law-of-the-case doctrine applied because the previous panel stated in its opinion that plaintiff had established her prima facie case under the WPA.  In our previous opinion, a majority of the panel in this case, therefore, reversed the trial court's summary disposition decision in favor of MMCG and remanded for further proceedings consistent with its opinion.  One member of the panel, in a dissenting opinion, disagreed that the previous *McNeill-Marks I* panel's de novo review and pronouncement that plaintiff established her prima facie case actually involved consideration and decision on the issue whether plaintiff made a "report" or engaged in "reporting" as required under the WPA.

MMCG sought leave to appeal to our Supreme Court which, as previously stated, reversed and remanded.  Our Supreme Court directed that we consider "the question whether plaintiff's communication to her attorney satisfied the reporting requirement of MCL 15.362" because it had not been "actually decided, explicitly or implicitly in the prior appeal, . . . nor was it necessarily determined . . . ." *McNeill-Marks*, ___ Mich at ___ (citations omitted).

## II.  STANDARDS OF REVIEW

We review de novo a trial court's summary disposition decision.  *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).  "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).  When considering a motion under MCR 2.116(C)(10), courts must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).  Summary disposition under MCR 2.116(C)(10) is proper if no genuine issue regarding any material fact exists and the movant is entitled to judgment as a matter of law. *Bazzi v Sentinel Ins Co*, 502 Mich 390, 398; 919 NW2d 20 (2018).  A genuine issue of material fact exists "when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

---

[2] *McNeill-Marks v MidMichigan Medical Center-Gratiot*, 502 Mich 851; 912 NW2d 181 (2018).

[3] *McNeill-Marks v MidMichigan Medical Center-Gratiot*, 503 Mich 854; 915 NW2d 888 (2018).

We review de novo whether evidence established a prima facie case under the WPA which is a question of law. *Hays v Lutheran Soc Servs of Mich*, 300 Mich App 54, 59; 832 NW2d 433 (2013). "As a matter of statutory interpretation, the definition of 'report' is a question of law we review de novo." *Id.* (citation omitted). We review de novo a trial court's interpretation and application of a statute which is also a question of law. *Eggleston v Bio–Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

## III. ANALYSIS

We are tasked with determining whether plaintiff made a "report" when she told her attorney that Marcia Fields violated the personal protection order (PPO) that required Fields to refrain from stalking plaintiff. In *McNeill-Marks I*, after ruling that plaintiff's attorney met the statutory definition of a "public body" for purposes of the WPA, *McNeill-Marks I*, 316 Mich App at 23, the Court did not elaborate on the meaning of the term "report" as used in the WPA. In *Rivera v SVRC Industries, Inc*, 327 Mich App 446; 934 NW2d 286 (2019), however, this Court had occasion to consider whether the plaintiff's communications with her employer's attorney constituted a "report" within the meaning of MCL 15.362. *Id.* at 451-453. This Court analyzed whether the plaintiff made a "report" sufficient to establish the protected-activity element of her prima facie case. The *Rivera* Court ruled that the trial court failed to thoroughly analyze the nature of the plaintiff's conversation with her employer's attorney regarding whether it constituted a "report" of a violation or suspected violation of law as required under the WPA and had erred by reaching the conclusion that she had. *Id.* at 462.

Citing *Henry v City of Detroit*, 234 Mich App 405, 410; 594 NW2d 107 (1999), the *Rivera* Court explained that the making of a "report" for WPA purposes requires that the plaintiff, on her own initiative, communicates to a public body the wrongful conduct with the purpose of bringing the "as yet hidden, violation to light . . . ." *Rivera*, 327 Mich App at 462 (quotation marks omitted). Because she spoke to her employer's attorney at her employer's request, the plaintiff "was not an 'initiator' and did not 'take[] it upon [herself]' to communicate with" the employer's attorney. *Id.* at 462-463 (citation omitted). The *Rivera* Court also concluded that the plaintiff's communication with her employer's attorney did not constitute "reporting" under the WPA because she merely told him what she told the employer, such that, the information was not disclosed for the first time. *Id.* at 463.

Because the WPA does not define the term "report," the *Rivera* Court consulted dictionary definitions to determine the plain and ordinary meaning of the term. *Id.* It concluded that, although "report" has many definitions, "the definitions most applicable in the context of the WPA are 'to make a charge against' or 'to make known the presence, absence, condition, etc.' of something." *Id.* at 463-464. It stated:

> In other words, under the WPA, a plaintiff "reports" a violation of the law when he or she "makes a charge" of illegality against a person or entity or "makes known" to a public body pertinent information related to illegality. Plaintiff in this case did neither in her conversation with [her employer's attorney]. Her discussion with [him] cannot reasonably be seen as "charging" LS with illegal conduct, and plaintiff did not make anything known to [her employer's attorney] that he did not already know by virtue of plaintiff's earlier communications with [her employer]. We

-3-

conclude that plaintiff, at most, communicated an illegality to a person falling under the broad definition of "public body" and did not engage in protected activity under the WPA. [*Id.* at 464 (quotation marks, alteration, and citation omitted).]

The *Rivera* Court acknowledged that under *McNeill-Marks I*, an attorney may constitute a "public body" for WPA purposes, but explained that the determination whether a plaintiff made a "report" requires analysis of the nature of the communications with the attorney:

"A lawyer is an agent, to whom clients entrust matters, property, and information, which may be of great importance and sensitivity, and whose work is usually not subject to detailed client supervision because of its complexity." See 1 Restatement Law Governing Lawyers, 3d, Introductory Note, p 124. "[F]undamental to the existence of an agency relationship is the right to control the conduct of the agent with respect to the matters entrusted to him." *St Clair Intermediate Sch Dist v Intermediate Ed Ass'n/Mich Ed Ass'n*, 458 Mich 540, 557-558, 581 NW2d 707 (1998) (citation omitted). Therefore, when plaintiff communicated with [her employer's attorney] at defendant's direction, she was, in essence, again communicating with [her employer's attorney's] principal, i.e., [her employer]. Plaintiff's communication with [her employer's attorney] cannot reasonably be termed "an attempt to bring the, as yet hidden, violation to light to remedy the situation or harm done by the violation," *Henry*, 234 Mich App at 410, when (1) plaintiff had already imparted the information directly to [her employer], (2) [her employer] had already shared the information with [her employer's attorney], and (3) in further speaking with [her employer's attorney], plaintiff merely repeated the same information to [her employer's] agent. Consequently, plaintiff's communication with [the employer's attorney] was not a "reporting" of information under the WPA.

To conclude otherwise would be to transform what was a nonactionable communication (i.e., plaintiff's communication with [her employer], which is not a "public body" under the WPA) into an actionable one merely because, at [her employer's] behest, plaintiff reconveyed the same information to [her employer's] attorney-agent. We cannot endorse such a strained reading of the "reporting" requirement of the protected-activity element under the WPA. [*Id.* at 464-465.[4]]

The *Rivera* Court clarified that a person making a claim under the WPA must establish that she initiated making a "report" which must involve "the making of a charge against" or the "making known" a violation or suspected violation of law. Further, an attorney who merely fits the broad definition of a "public body," by virtue of participation in the profession, does not suffice for making a "report" to a "public body" for WPA purposes. When a person claims whistleblower status based on an allegation that a communication with an attorney constituted a "report," *Rivera*

---

[4] In a footnote, this Court also clarified that the plaintiff communicated information about an employee's statements that she perceived as threatening, but she never clearly indicated that she communicated about an illegality or a suspected illegality. *Id.* at 464 n 6.

-4-

instructs that trial courts must engage in a deeper analysis of the particular facts and circumstances of the communication.

Turning to the facts of this case, plaintiff testified that as she emerged from an operating room in the hospital at which she worked, she stated "Hello" to persons coincidentally in the hallway. Fields, who happened to be a hospital patient being transported in a wheelchair in the vicinity, responded, "Hello, Tammy," in a manner that caused plaintiff emotional distress because she feared that Fields discovered where she worked in the hospital which made her vulnerable and possibly her fellow employees unsafe. Plaintiff called her supervisor, who knew of the PPO against Fields, and informed her of the incident. *McNeill-Marks I*, 316 Mich App at 8-10.

Plaintiff next called her personal attorney regarding the incident. During their conversation, plaintiff instructed her attorney not to serve the newly entered PPO on Fields. Unknown to plaintiff and contrary to plaintiff's directive to her attorney, a process server later served Fields the PPO in her hospital room. The record reflects that Fields complained to MMCG and alleged that plaintiff violated HIPPA, which caused MMCG to investigate and ultimately terminate plaintiff for violating HIPPA and MMCG's privacy policies because of her telephone conversation with her attorney. *Id*. at 10-13.

The record indicates that plaintiff, on her own initiative, communicated to her personal attorney Fields's potentially illegal conduct. Plaintiff made known to her attorney Fields's conduct, but the record establishes that at the time of that communication she did not do so for purposes of making a charge of illegality against Fields "to remedy the situation or harm done by the violation[.]" *Henry*, 234 Mich App at 410. Applying the principles articulated in *Henry* and *Rivera*, plaintiff did not make a "report" as envisioned by the WPA. Her communication lacked the purposeful intent necessary for qualification as a "report" for WPA purposes. She informed her personal attorney but intended no action be taken. Her attorney agreed to honor her direction.

Plaintiff contends that she reported to her attorney as an officer of the court and intermediary who could inform the circuit court of Fields's violation of law because an existing PPO prohibited Fields from contacting or communicating with plaintiff. That explanation casts an after-the-fact interpretive gloss on the actual content of her communication with her attorney. Plaintiff's sworn testimony of her expressed desire that her attorney do nothing, undermines her claim that she made a "report" for WPA purposes. Accordingly, the trial court correctly held that plaintiff failed to make a "report" under the WPA, and therefore, did not err by granting MMCG's motion for summary disposition as a matter of law.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael J. Riordan
/s/ James Robert Redford