*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHASE J. LAPASINSKAS,

Plaintiff-Appellee,

v

DYNAMIC TECHNOLOGY SOLUTIONS, INC.
and DYNAMIC COMPUTER CORPORATION,

Defendants-Appellants.

UNPUBLISHED
October 21, 2025
10:19 AM

No. 367854
Oakland Circuit Court
LC No. 2021-189212-CD

Before: GADOLA, C.J., and RICK and YATES, JJ.

PER CURIAM.

Defendant, Dynamic Technology Solutions, Inc., also operating as Dynamic Computer Corp, appeals as of right the jury trial judgment in favor of plaintiff in his claim of retaliatory discharge under the Whistleblowers' Protection Act (WPA), MCL 15.361, *et seq.* We affirm in part, vacate in part, and remand for entry of an amended judgment.

## I. FACTS

Defendant hired plaintiff in 2015 to perform work related to logistics and shipment of equipment from defendant's warehouses. In 2016, defendant paid for plaintiff's enrollment in an occupational health and safety course at Eastern Michigan University, where he studied compliance with the Occupational Safety and Health Act (OSHA), 29 USC 651 *et seq.* According to plaintiff, he was defendant's only employee to receive safety training.

At the time of the events in this case, Farida Ali was defendant's president and chief executive officer; Mousa Kadiri was defendant's production manager and plaintiff's supervisor. In 2019, defendant promoted plaintiff to the position of Lead Technical Operations Specialist, and increased plaintiff's compensation by over 16%. In 2021, defendant increased plaintiff's wages by another 3%. Jeff Ruffini, one of defendant's vice presidents, advised plaintiff of the pay increase by letter dated May 5, 2021, which stated:

> I want to thank you for your performance for Dynamic Technology Solutions. In recognition of that performance, we are providing a merit increase this year to you.

-1-

Effective May 3, 2021, your new hourly rate will be $20.99/hour reflecting a 3% increase. This aggregates to a new annual rate of $41,776.80.

Thank you for being a valued team member. Again, congratulations!

Plaintiff was dissatisfied with the 3% increase. Plaintiff talked to Ruffini and Kadiri about opportunities for growth and advancement in the company; according to plaintiff, they were not encouraging.

Plaintiff expressed his dissatisfaction with his pay increase in an e-mail to Ali on May 12, 2021, and again on May 28, 2021, requesting an increase in his salary. Plaintiff then met with Ali to discuss his request for higher pay. Ali testified that plaintiff indicated that he planned to seek a higher-paying job. She testified that she found his attitude disrespectful and arrogant, and that she concluded that plaintiff had become a disgruntled employee who was no longer an asset to the company. She determined that she would terminate plaintiff's employment, but decided to wait to discharge him because the company was very busy at that time.

In early June 2021, plaintiff began a second part-time job at a fireworks store. To accommodate his second job, plaintiff began to arrive at defendant's facility two hours early and leave two hours early each day.

On June 5, 2021, plaintiff submitted a complaint to the Michigan Occupational Safety and Health Administration (MIOSHA), describing various safety hazards at defendant's workplace and urging MIOSHA to inspect defendant's premises. He also asked that his name not be revealed to defendant. MIOSHA notified defendant of the complaint in correspondence dated June 9, 2021, requesting that defendant investigate the alleged safety hazards and inform MIOSHA of the corrections to the hazards within 30 days. MIOSHA listed three specific hazards from plaintiff's broader list: blocked fire extinguishers in the front and middle warehouse; blocked exit routes in the middle warehouse; and flammable materials not in locked storage or in a fireproof cabinet in the front warehouse.

Ali assigned Kadiri and Patrick Green, defendant's accounting and human resources manager, to correct the alleged hazards without consulting plaintiff, although plaintiff was the only employee with occupational safety training. Ali testified at trial that she assigned Green and Kadiri to address the MIOSHA complaint instead of plaintiff because the hazards were minor problems that could be corrected easily without specialized knowledge. Defendant reported to MIOSHA that the conditions had been corrected; MIOSHA determined that defendant's response was satisfactory and closed the complaint.

According to plaintiff, defendant thereafter made a concerted effort to identify who had made the complaint to MIOSHA. Plaintiff testified by deposition that Dan Barry, the warehouse manager, and Michael Russo, a logistics worker, informed him that Ali suspected that plaintiff had submitted the MIOSHA complaint. Plaintiff asked Kadiri if Ali and Ruffini believed that plaintiff made the MIOSHA complaint; according to plaintiff's testimony during his deposition, Kadiri confirmed that they did. Kadiri then told plaintiff that he no longer would be permitted to arrive at work early and work alone in the facility because defendant's management feared that plaintiff would do some malicious act.

-2-

Plaintiff used vacation leave starting June 30, 2021, and was scheduled to return to work July 6, 2021. On the morning of July 7, 2021, plaintiff sent a text message to Kadiri to report that he needed to stay home to repair his home's air conditioner. Kadiri did not object. When plaintiff returned to work on July 8, 2021, however, Ali terminated his employment.

Plaintiff initiated this lawsuit alleging that defendant terminated his employment in retaliation for making the MIOSHA complaint. Defendant denied the allegation. Ali testified that at the time she fired plaintiff, she did not know that plaintiff had filed the MIOSHA complaint and that she discharged plaintiff because he had aggressively demanded a larger pay increase and threatened to quit if he did not receive the larger increase. Defendant moved for summary disposition of plaintiff's complaint under MCR 2.116(C)(10), contending that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. The trial court denied defendant's motion, finding that plaintiff had established a prima facie case of retaliation under the WPA. At the conclusion of trial, the jury returned a verdict for plaintiff, awarding plaintiff $50,000 in economic damages and $50,000 in noneconomic damages. Defendant moved alternatively for a new trial, judgment notwithstanding the verdict (JNOV), or remittitur. The trial court denied the motion and entered judgment in favor of plaintiff for $100,000. Defendant now appeals.

## II. DISCUSSION

### A. SUMMARY DISPOSITION

Defendant contends that the trial court erred by denying its motion for summary disposition. Defendant argues that plaintiff failed to establish a genuine issue of material fact regarding the element of causation and also relied upon inadmissible hearsay to establish causation. We disagree that the trial court erred by denying defendant's motion for summary disposition.

We review de novo the trial court's decision to grant or deny summary disposition. *Jostock v Mayfield Twp*, 513 Mich 360, 368; 15 NW3d 552 (2024). We also review de novo the interpretation of a statute. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the claim, and is warranted when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). When reviewing a motion for summary disposition under MCR 2.116(C)(10), we consider the documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. A genuine issue of material fact exists if the record leaves open an issue upon which reasonable minds might disagree. *Id*. "Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016) (quotation marks and citation omitted).

1. CAUSATION

The WPA precludes an employer from taking adverse employment action against an employee who reports, or is about to report, a violation or suspected violation of law to a public body, verbally or in writing. MCL 15.362; *Pace v Edel-Harrelson*, 499 Mich 1, 6; 878 NW2d 784 (2016). The act seeks to protect the public by protecting the whistleblowing employee reporting suspected violations of law. *Green v Pontiac Pub Library*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363459); slip op at 7. Because the statute is remedial in nature, we construe it liberally to further the goal of protecting the public by protecting whistleblowers. *Stefanski v Saginaw Co 911 Communications Ctr Auth*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 166663); slip op at 8.

Specifically, § 2 of the WPA, MCL 15.362, provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

To establish a prima facie case under the WPA, a plaintiff must show that he or she was (1) engaged in protected activity as defined by the act, (2) the defendant took an adverse employment action against the plaintiff, and (3) a causal connection exists between the protected activity and the adverse employment action. *Stefanski*, ___ Mich at ___; slip op at 9. A "protected activity" under the WPA is defined as reporting to a public body a violation of a law, regulation, or rule, being about to report to a public body such a violation, or being asked by a public body to participate in an investigation. *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016). To prove the element of causation, something more than a temporal connection between the protected activity and the adverse employment action is required. *Debano-Griffin v Lake Co*, 493 Mich 167, 177; 828 NW2d 634 (2013).

The plaintiff may rely upon either direct or indirect evidence of retaliation to establish a prima facie case under the WPA. *McNeill-Marks*, 316 Mich App at 17. Direct evidence is evidence "that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id*. (quotation marks and citation omitted). To establish causation using indirect evidence, the plaintiff must present evidence from which "a factfinder could *infer* that the plaintiff was the victim of unlawful retaliation." *Debano-Griffin*, 493 Mich at 176 (emphasis added) (quotation marks and citation omitted).

Once the plaintiff establishes a prima facie case, there is a presumption of retaliation. The employer may rebut this presumption by offering a legitimate reason for its adverse employment action. *Id*. A plaintiff may still avoid summary disposition, however, by showing that a reasonable finder of fact could conclude that the reason offered by the defendant for the presumed retaliation

-4-

is a pretext, meaning that the factfinder could still conclude that the protected activity was a motivating factor in the employer's adverse action. *Id*. A plaintiff may establish that a defendant's articulated reason is a pretext by showing that the reason (1) has no basis in fact, or (2) although based in fact, it was not the factor motivating the decision, or (3) if the reason was based in fact and a motivating factor, the reason was insufficient to justify the decision. See *Debano-Griffin*, 493 Mich at 180. "The proofs offered in support of the prima facie case may be sufficient to create a triable issue of fact that the employer's stated reason is a pretext, as long as the evidence would enable a reasonable factfinder to infer that the employer's decision had a . . . [retaliatory] basis." *Taylor v Modern Engineering, Inc*, 252 Mich App 655, 661; 653 NW2d 625 (2002) (quotation marks and citation omitted).

In this case, defendant moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff had not demonstrated a causal connection between plaintiff's report to MIOSHA and the termination of his employment, only a temporal connection. Plaintiff presented evidence that on May 5, 2021, defendant gave him a 3% pay increase and complimented him on his performance. In late May, 2021, he met with Ali and attempted to negotiate a higher salary. On June 5, 2021, he reported various safety violations to MIOSHA, which contacted defendant about the reported violations. Shortly thereafter, plaintiff spoke with Kadiri, his supervisor, about his concern that Ali and Ruffini believed him to be the whistleblower. In his deposition, plaintiff testified that Kadiri confirmed that management thought plaintiff was the whistleblower and advised plaintiff that he was no longer allowed in the work place unsupervised because management feared that plaintiff would retaliate. When plaintiff returned from vacation on July 8, 2021, defendant terminated his employment. The trial court denied defendant's motion, finding that plaintiff had presented enough evidence that it was possible that a jury could find in favor of plaintiff.

Defendant contends that plaintiff did not prove a causal connection[1] between his report to MIOSHA and the termination of his employment, because plaintiff failed to demonstrate that Ali,

---

[1] Defendant argues that to establish the element of causation, plaintiff was required to prove that "but for" plaintiff's whistleblowing activity, defendant would not have taken the retaliatory action. In support of this reasoning, defendant points to *Rouch World, LLC v Dep't of Civil Rights*, 510 Mich 398, 404-405, 420; 987 NW2d 501 (2022), a case alleging a claim of discrimination under the Elliot-Larsen Civil Rights Act, MCL 37.2101 *et seq*. In *Rouch*, our Supreme Court determined that under § 302 of the ELCRA, MCL 37.2302(a), which prohibits the denial of "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of . . . sex," "causation is established where the discriminatory action would not have occurred but for the sex of the complainant." *Rouch*, 510 Mich at 420. Because whistleblower claims are analogous to other anti-retaliation employment claims brought under employment discrimination statutes, our Supreme Court has stated generally that claims under the WPA "should receive treatment under the standards of proof of those analogous [claims]." *Debano-Griffin*, 493 Mich at 175 (quotation marks and citations omitted). There is no indication, however, that the "but for" test applied in the context of a claim alleging discrimination on the basis of sex under the ELCRA is applicable here, nor is there a need to seek guidance in this case by considering the application of similar statutes given the ample

the sole decisionmaker in terminating his employment, knew that plaintiff made the MIOSHA complaint at the time she fired him. We disagree that plaintiff failed to present evidence sufficient to support a finding of causation.

As discussed, under the WPA the evidence presented to establish causation may be sufficient to survive summary disposition if the evidence enables a reasonable factfinder to infer a retaliatory basis for the employer's decision. See *Taylor*, 252 Mich App at 661. When the evidence shows that the defendant's adverse employment action against the plaintiff might have been either in retaliation for the plaintiff's whistleblowing activity or a result of the plaintiff's poor work performance, a question for the jury remains on the issue of causation. See, e.g., *Henry v Detroit*, 234 Mich App 405, 414; 594 NW2d 107 (1999) (holding that whether the protected activity or the plaintiff's job performance was the real reason for the employer's action against the plaintiff was a question properly left to the jury).

Here, plaintiff's proffered evidence established more than a temporal connection between his MIOSHA report and defendant's adverse employment decisions. Plaintiff testified in his deposition that Kadiri told him that Ali and Ruffini suspected that plaintiff made the MIOSHA complaint. In addition, plaintiff testified that he learned he was forbidden to work alone in the building only after defendant received the MIOSHA notice. Plaintiff also offered evidence that his performance was not criticized before the MIOSHA complaint; he received a favorable performance evaluation in February 2021 and received correspondence from defendant describing his 3% raise as based on his meritorious performance on May 5, 2021. This evidence supports that in the brief period between plaintiff's MIOSHA report on June 5, 2021, and the termination of plaintiff's employment on July 8, 2021, plaintiff was downgraded from a reliable employee to a disloyal and disgruntled employee. A jury could infer from these facts that defendant's termination of plaintiff's employment was not a mere temporal coincidence, but rather a response arising from defendant's belief that plaintiff submitted the MIOSHA complaint. As discussed, the WPA, as a remedial statute, is liberally construed to favor the persons that the act is intended to protect. *Stefanski*, ___ Mich at ___; slip op at 8. We conclude that the trial court correctly determined that plaintiff established a prima facie case under the WPA, and therefore properly denied defendant's motion for summary disposition.

## 2. HEARSAY

Defendant also contends that the trial court erred by denying its motion for summary disposition because the evidence relied upon by plaintiff to establish the causation element of his prima facie case was inadmissible hearsay. Specifically, defendant argues that plaintiff's testimony that Dan Barry, defendant's warehouse manager, and Michael Russo, a logistics worker employed by defendant, told him that defendant's management believed plaintiff to be the

---

authority specifically establishing the evidence needed to establish a prima facie case under the WPA. The analysis required in cases addressing claims under the WPA requires a demonstration by the plaintiff that the alleged retaliatory action was brought about, at least in part, by the protected activity, but does not require a "but for" analysis. See *Debano-Griffin*, 493 Mich at 180.

whistleblower was inadmissible hearsay that could not be considered to establish a question of fact on the element of causation.

When determining whether the nonmoving party can establish a genuine issue of material fact, the trial court may consider only admissible evidence. See *Maiden v Rozwood*, 461 Mich 109, 125; 597 NW2d 817 (1999). In Michigan, hearsay is not admissible except as provided by the Michigan Rules of Evidence. MRE 802. At the time of trial in this case, MRE 801[2] provided, in pertinent part:

The following definitions apply under this article:

(a) Statement. A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.

(b) Declarant. A "declarant" is a person who makes a statement.

(c) Hearsay. "Hearsay" is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

(d) Statements Which Are Not Hearsay. A statement is not hearsay if—

\* \* \*

(2) Admission by Party-Opponent. The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity, except statements made in connection with a guilty plea to a misdemeanor motor vehicle violation or an admission of responsibility for a civil infraction under laws pertaining to motor vehicles, or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy.

In plaintiff's deposition, plaintiff testified that Barry and Russo told him that defendant's management believed plaintiff to be the whistleblower. The following colloquy took place during plaintiff's deposition:

---

[2] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). All references to the Michigan Rules of Evidence in this analysis pertain to the version of the rule in effect at the time of trial.

*Q.* Did anybody tell you that Dynamic knew it was you that filed the MIOSHA complaint prior to you being terminated?

*A.* Yes.

*Q.* Who told you that they knew?

*A.* Dan Barry told me.

*Q.* Dan Barry told you that they—that somebody knew?

*A.* Yeah.

*Q.* When did he tell you that?

*A.* I don't recall the date.

*Q.* And how did he tell that to you?

*A.* As I was walking by he goes, they knew it was you that made the complaint?

*Q.* So this is while you were working?

*A.* Yes.

*Q.* And this was just an out-of-the-blue statement? You're walking by one day and he says, they know you filed the complaint?

*A.* Yes.

\* \* \*

*Q.* Tell me exactly what you remember Dan Barry telling you at that time, please.

*A.* I believe he was standing there, and I was walking by and he goes, they know it was you that filed the complaint.

Plaintiff testified that Russo made a similar statement on the same day, and neither declarant specified who they meant by "they." Barry was a warehouse manager, and Russo was a fellow employee; there is no evidence that either declarant was authorized to speak on behalf of defendant regarding defendant's position on the MIOSHA complaint or that the statement made was within the scope of that employee's employment. We conclude that Barry's and Russo's statements were inadmissible under MRE 801(d)(2), and therefore could not support plaintiff's prima facie case for purposes of the motion for summary disposition.

However, plaintiff also testified in his deposition that Kadiri, his supervisor, confirmed plaintiff's fear that he was suspected of being the whistleblower and that defendant's decision to

prohibit plaintiff from entering the premises unsupervised was a result. During his deposition, plaintiff testified:

> *Q*. So sometime . . . after you heard these statements you supposedly went and talked to Mousa [Kadiri] in the training room. Tell me the entire conversation, beginning to end, as best as you presently recall.
>
> *A*. I believe I sat down with him and said, Hey, I'd like to talk about the rumors that are going around. After I talked to him about that he told me that they didn't want me in the building anymore, that they suspected it was me that made the complaint, they wanted him to come in early because they were afraid I was going to do something malicious, and then that was about it.
>
> *Q*. Did Mousa say who "they" was?
>
> *A*. He said Jeff and Farida [Ruffini and Ali] think it was you.
>
> *Q*. Specifically said Jeff and Farida think it was you?
>
> *A*. Yes.

Kadiri's statement qualifies as a party admission because Kadiri was plaintiff's supervisor, and plaintiff's standing with Ali and Ruffini was a matter within the scope of Kadiri's employment. Kadiri's statements thus were admissible under MRE 801(d)(2)(D). See *Airgas Specialty Products v Mich Occupational Safety and Health Administration*, 338 Mich App 482, 516; 980 NW2d 530 (2021) (An employee's statement concerning a matter within the scope of the employee's employment made during the employment relationship is not hearsay). Because this evidence supports a finding of causation, we conclude that the trial court's ruling on the motion for summary disposition was supported by admissible evidence.

### 3. PRETEXT

Defendant also contends that it was entitled to summary disposition because plaintiff failed to establish a genuine issue of material fact that defendant's articulated reason for terminating plaintiff's employment was a pretext for retaliation. We disagree.

When a plaintiff establishes a prima facie case of retaliation, thereby giving rise to a rebuttable presumption that the defendant unlawfully retaliated, the defendant may rebut the presumption of retaliation and obtain summary disposition if it demonstrates a legitimate justification for its adverse employment action, unless the plaintiff can show that the defendant's justification was a pretext for unlawful retaliation. *Debano-Griffin*, 493 Mich at 179. The plaintiff may establish that the defendant's articulated nonretaliatory reason is pretextual "(1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision." *Id*. at 180 (quotation marks and citation omitted).

In its motion for summary disposition, defendant contended that the reason it terminated plaintiff's employment was that he had become disgruntled about his 3% wage increase, had

threatened to find other employment, and was disrespectful during his discussion about his wages with Ali. Plaintiff contended that defendant's articulated reasons for terminating his employment were not the actual factors motivating the decision. Plaintiff presented evidence that defendant did not terminate his employment immediately after his request for a pay increase, and that it was not until after he made the report to MIOSHA that he was prohibited from entering the workplace unsupervised. Before these events, plaintiff was considered a good employee and had been given a merit-based pay increase in May 2021. While it was possible that the reason stated by defendant for plaintiff's discharge was valid, a jury also reasonably could find that plaintiff's report to MIOSHA was a motivating factor in defendant's discharge of plaintiff. A reasonable trier of fact could infer that Ali made the termination decision after she received the MIOSHA complaint, and retroactively attributed her decision to plaintiff's attitude during their meeting. Because plaintiff presented evidence that defendant's reason for terminating his employment was a pretext, the trial court did not err by denying defendant's summary disposition motion.

C. JNOV

Defendant contends that the trial court erred by denying its motion for judgment notwithstanding the verdict (JNOV) because the trial court abused its discretion by admitting plaintiff's testimony regarding the statements of Barry and Russo. Although defendant did not raise this issue in its motion for JNOV, defendant objected to the admission of the testimony at trial, thereby preserving the issue for review on appeal. See *Kuebler v Kuebler*, 346 Mich App 633, 652 n 9; 13 NW3d 339 (2023); MRE 103(a)(1).

We review de novo the trial court's decision to grant or deny a motion for JNOV. *International Outdoor, Inc v SS Mitx, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 359082; 359811); slip op at 11. We view the evidence and all legitimate inferences arising from the evidence in the light most favorable to the nonmoving party to determine whether a question of fact existed. *Id*. If reasonable jurors honestly could have reached different conclusions, the jury verdict must stand. *Id*. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Id*. at ___; slip op at 8. A trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it makes an error of law. *Id*. at ___; slip op at 3-4. We review de novo questions of law underlying evidentiary rulings, including the interpretation and application of the court rules and the rules of evidence. *Id*. at ___; slip op at 4.

At trial, the court admitted the statements of Barry and Russo as admissions of a party opponent, reasoning that the declarants were "talking about the culture of the company, their perception of what's happening at the company." As discussed, however, plaintiff did not establish that Barry or Russo were speaking within the scope of their employment or that they were agents authorized to speak for defendant when they made the statements to plaintiff, and the statements therefore were not admissible under MRE 801(d)(2). We conclude, however, that any error in the admission of the evidence was harmless. MCR 2.613(A) provides:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for

vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

"To overcome this rule, a party must show that an error was prejudicial such that a failure to grant relief would be inconsistent with substantial justice, i.e., that it is more likely than not the error affected the case's outcome." *In re Miller*, 347 Mich App 420, 429; 15 NW3d 287 (2023).

Plaintiff testified that Kadiri discussed with him the MIOSHA complaint and plaintiff's concern that he was suspected of being the whistleblower. Plaintiff testified that during that conversation, Kadiri told plaintiff that he was no longer allowed to be in the workplace unsupervised. Unlike his deposition testimony, plaintiff did not specifically testify at trial that Kadiri told him that Ali and Ruffini believed that plaintiff submitted the MIOSHA complaint, but the jury could infer from plaintiff's testimony that Kadiri's statement that "they didn't want [plaintiff] in the building at certain times," meant that defendant suspected plaintiff of making the MIOSHA complaint. Because admissible evidence was introduced that supported the jury's finding that defendant's explanation for firing plaintiff was a pretext, any error in the admission of the hearsay statements of Barry and Russo was harmless and does not warrant reversal.

## D. REMITTITUR

Defendant contends that the trial court erred by denying its motion for remittitur because plaintiff did not offer proof of economic damages in excess of $25,000. We agree.

Remittitur is a reduction of the amount awarded by the jury in its verdict. *International Outdoor, Inc*, ___ Mich App at ___; slip op at 13 Remittitur is warranted when the jury verdict exceeds the highest amount supported by the evidence presented at trial. *Id*. The trial court should exercise significant restraint when exercising its power to grant remittitur; if the jury award falls within the range of the evidence and is within the range of what reasonable minds would deem just compensation, the jury award should not be disturbed. *Id*. We review for an abuse of discretion the trial court's decision on a motion for remittitur, viewing the evidence in the light most favorable to the non-moving party. *Id*. at ___; slip op at 12-13.

In this case, plaintiff presented evidence supporting an award of $25,000 in economic damages and $75,000 in noneconomic damages. The jury awarded plaintiff $50,000 in economic damages and $50,000 in noneconomic damages. We agree with defendant that the jury's finding of economic damages is inconsistent with the evidence. Accordingly, the trial court abused its discretion by denying defendant's motion for remittitur.

We vacate the judgment with respect to the award of economic damages. We affirm the judgment in all other respects. We remand to the trial court for entry of an amended judgment for $25,000 in economic damages, and $50,000 in noneconomic damages. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Christopher P. Yates